## BANKSTON v. BANKSTON.
### No. 14533.

Court of Civil Appeals of Texas. Dallas.
July 25, 1952.

Rehearing Denied Oct. 3, 1952.

John R. Carrell, Leachman, Matthews & Gardere, Charles O. Galvin and Henry D. Akin, all of Dallas, for appellant.

Johnson & Abney, Thompson, Knight, Wright & Simmons and Pinkney Grissom, all of Dallas, for appellee.

YOUNG, Justice.

The amended petition of appellant-plaintiff, filed October 11, 1951, sought to vacate and set aside a divorce decree between the parties of April, 1950 in so far as the property settlement was concerned; and upon hearing of defendant's motion for summary judgment, Rule 166-A, Texas Rules of Civil Procedure, the same was sustained, with entry of final order that petitioner take nothing and ensuing appeal.

Embodied in the prior judgment of divorce was an instrument of property settlement containing in part the following recitals: "* * * that the agreements herein reached, including the division of the community property, are based upon the facts and details regarding the items, values and conditions of the property contained in a written report prepared by Billups, Wood & Champlin through the resident partner, Bryan Arnn, which report purports to contain all the assets and liabilities as of March 6, 1950, of the com-

munity estate of William O. Bankston and Fay Swain Bankston, and which report is duly verified by said William O. Bankston, and in the certificate attached to said report the said William O. Bankston represents and unconditionally guarantees that all the properties, rights, titles and interest in which he has, as a part of the community estate of the said Fay Bankston and himself, or personally and as part of his separate estate, any interest whatsoever, including real property, personal property or any other property of any kind or character, are fully set forth in said report, and that no person, firm or corporation holds or owns property of any kind or character for him or for his account, except as shown in said report; * * *."

The auditor's report as above referred to is made the basis of plaintiff's bill of review under detailed allegations of fraud and misrepresentation; in substance, that property values therein had been represented to her by defendant as actual cash market values rather than book or cost values as she later discovered. It is with reference to such report (styled plaintiff's Exhibit A) that allegations of fraud are made, summarized by appellant in brief as follows: "(a) Defendant herein made representations that the values as shown in 'Exhibit A' were market values of the various properties. (b) That the question of value was a material fact when making said property settlement. (c) That such representations by defendant that said values were market values were false at the time they were made, and that such representations were made by defendant with the intent and design to induce plaintiff to enter into said property settlement with defendant. (d) That such representations as to value as were made by the defendant were relied upon by this plaintiff and she was induced by said representations to enter the property settlement complained of herein. (e) That as a result of said representations by defendant as to value, this plaintiff suffered damages in that she did not receive in said settlement, that to which she was entitled." Plaintiff further alleged that over and above family living expenses, defendant had squandered during the years 1942 through 1950 a sum in excess of $220,000 in fraud of her community rights; praying in conclusion, "That said purported settlement agreement executed by and between the parties herein and that portion of this court's judgment in cause No. 41460 B/J Fay Swain Bankston vs. W. O. Bankston adopting and approving said settlement be adjudged and decreed by this Honorable Court to be void and of no force and effect, and that an accounting be had of all property accumulated by plaintiff and defendant during their marriage and said property be divided on a fifty-fifty basis, and that from her portion of such division there be deducted the sum of $53,900.00, the amount she received under said purported settlement, and in this connection plaintiff says she is ready and willing and she hereby offers to do whatever equity requires in the premises."

Documents submitted by defendant as Exhibits in motion for summary judgment included plaintiff's petition for divorce in cause No. 41460, the proceeding by which the Bankstons were divorced. In that pleading plaintiff charged that she and defendant had been separated for some four years; that throughout their married life he had refused to discuss business affairs and "what constituted their personal or community estates or their financial problems or business in any manner" with her; insisting that she "must be satisfied, in lieu of such frank and full discussion, with a statement by him as to how much he could or could not afford to give her in such partition"; that "by reason of the defendant's refusal to permit her to know any of the facts concerning the financial affairs of the community estate, as above alleged, and by reason of the defendant's attempt to force her to accept his word as to what would be a proper settlement and partition of the community estate, and further by reason of the fact that defendant's ownership in various enterprises is closely connected with the ownership by members of his family," plaintiff was entitled to a preliminary injunction. Defendant's exhibit "B" on the hearing was the prior judgment of divorce in which it was recited that the court found, upon testimony of the parties,

that the property settlement in question was fair and just. The testimony taken in said divorce proceedings included the following sworn statements of plaintiff as elicited by the respective attorneys:

"Q. Now, Mrs. Bankston, you have been over that report? A. Yes.

"Q. And, based upon the facts set forth in that report have you reached an agreement of property settlement of the community estate— A. Yes.

"Q. (Continuing)—between yourself and Mr. Bankston? A. Yes. * * *

"Q. And the only evidence which you have as to the property belonging to the community estate is contained in this report, is it not? A. That's all I know. * * *

"Q. Mrs. Bankston, you and your attorney, of course, have gone over this report? A. Yes.

"Q. Fully? A. Yes.

"Q. And gone into the value of the properties as you deemed advisable and necessary, and this settlement agreement is made upon your knowledge of the properties as contained in this, plus the representations therein contained? A. That is true."

Such statement of facts further disclosed the examination of defendant Bankston by opposing counsel relative to the settlement agreement and the auditor's report upon which it was based. In her present bill, plaintiff expressly refers to Bankston-Hall Motors, Inc., a local Ford Agency, alleging that it had a cash market or "going concern" value substantially greater than book values less depreciation; the auditor's report showing that capital value of the corporation (par stock and surplus, paid in and earned) was $249,368.61, 45% of which, or $112,215.87, was owned by the community estate.

Through various points, appellant argues that triable issues of material facts were presented in her sworn pleading, thus precluding a disposition thereof by way of summary judgment; complaining in particular of the trial court's error in sustaining motion for summary judgment "on the grounds urged by appellee (1) That even

if appellee's representations to appellant and her attorney were false and fraudulent, the fraud thus practiced on appellant was intrinsic, rather than extrinsic, fraud and, therefore, could not provide the basis for overturning the prior judgment; (2) that the financial statement upon which appellant relied was a mere expression of opinion and not representations as to facts; (3) that, even if appellee's representations to appellant were false and fraudulent, appellant and her attorney did not rely on such representations; (4) that, even if appellee's representations to appellant were false and fraudulent, appellant and her attorney were negligent in relying on such representations."

■ "The rule is well established in this state that to obtain a new trial after the expiration of the term something more than that injustice has been done must be shown. It must appear: (1) That the former judgment was not caused by any negligence on him who seeks to set it aside, but that diligence was used to prevent it; (2) that he had a good defense to the action, which he was prevented from making by fraud, accident, or the acts of the opposing party, wholly unmixed with any fault or negligence of his own; (3) that there is good cause to believe that a different result will be obtained by a new trial; and (4) the pleadings and issues of the former suit, and its result, must be set forth distinctly and clearly. It has also been established that bills seeking relief from final judgment, solemnly rendered in the due and ordinary course of the administration of justice by courts of competent jurisdiction, are always watched by courts of equity with extreme jealously, and the grounds on which interference will be allowed are narrow and restricted. Johnson v. Templeton, 60 Tex. 238; Nevins v. McKee, 61 Tex. 412; Sharp v. Schmidt, 62 Tex. 263; Humphrey v. Harrell, Tex.Com. App., 29 S.W.2d 963; Empire Gas & Fuel Co. v. Noble, Tex.Com.App., 36 S.W.2d 451." Harding v. W. L. Pearson & Co., Tex.Com.App., 48 S.W.2d 964, 965. Such petitioner must, in addition to other indispensable requirements, show a sufficient excuse for not moving for new trial during

the term at which the judgment was rendered; Moore v. Moore, Tex.Civ.App., 259 S.W. 322; and in testing sufficiency of the bill in equity to set aside a prior judgment, its allegations are to be taken as true in so far as not in conflict with the former record; the pertinent facts of such prior record being taken as true in event of a conflict. Snow v. Cook, Tex.Civ.App., 278 S.W. 520.

Appellant makes no allegations as to when and how the so-called fraud was discovered, or why it was not sooner discovered; stating as a conclusion only that upon a proper accounting on basis of cash market values she would be entitled to an amount far in excess of that actually received. The latter statement should have been supplemented by affidavits of competent witnesses; petitioner merely relying on general allegations, conclusions, and deductions that a different result would be obtained on another trial. Be this as it may, sufficiency or not of pleading in the named particulars need not be further noticed because, in our opinion, her claim of fraud and misrepresentation has been foreclosed by the earlier trial and division of property.

■ Turning to the original pleadings, the judgment there is seen to be the final chapter of a real adversary contest; appellant being represented by an able attorney of her own choice, with fee commensurate to complexity of the litigation paid by defendant. Values set forth in the auditor's report in question (too lengthy for inclusion here) do not purport to represent cash market values, but par, cost, or book values only. Said report was the main subject of inquiry in the previous trial on the issue of a fair and just division of property; appellant testifying that she and her attorney had gone over same and value of the properties, and that the settlement agreement was made upon their knowledge of the properties so shown in said report, plus the representations therein contained. (These representations were with reference to defendant's sworn statement in property settlement that the auditor's report constituted a full disclosure of all community property; he being warned while on the witness stand at her instance that "Mrs. Bankston would have a half interest in any other property not contained therein".) Defendant was not questioned on the former hearing concerning property values, market or otherwise. In this connection said auditor's report reflected a net community deficit (liabilities over assets) of some $8,000, and it is obvious that the final settlement establishing a community worth of more than $100,000 was arrived at by use of factors not included in this report. It is further evident that appellant is again seeking to litigate an issue, implicit in the previous hearing, of what composed a fair division of the community; and under the record of such original proceeding, which is controlling, it is our conclusion that the instant action lacks the essentials of a bill of review.

■■ In the first place, the fraud here portrayed is intrinsic in kind rather than extrinsic. See for definition and discussion of the terms, Crouch v. McGaw, 134 Tex. 633, 138 S.W.2d 94; Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996. Plaintiff's bill, in allegations, discloses no situation where W. O. Bankston, by acts or statements, prevented a real litigation or investigation of her rights or from otherwise obtaining a fair hearing of her claim to an equality of estate. The fraud at most relates to untruths which misled both plaintiff and counsel into acquiescence and approval of an unjust division of property. If misrepresentations were made and appellant relied thereon, they bore either actually or potentially on the matters at issue in the former trial and thus tantamount to no more than intrinsic fraud. The rule supported by the overwhelming weight of authority is that fraud as a ground for vacating a judgment must be "what is known as 'extrinsic' fraud, that is, fraud in the means whereby the judgment was procured, and not fraud in the cause of action or matter put in issue and presented for adjudication, * * *." 1 Freeman on Judgments, 5th Ed., pp. 461, 462; 31 Am.Jur., pp. 230, 231; Crouch v. McGaw, supra.

■■ Second, appellant knew that this auditor's report—basis of settlement—made no reference to market value of the described property, the instrument being in conflict, at least prima facie, with defendant's alleged misrepresentations; and appellant need only have probed such obvious inconsistency for exposure of the fraud, if any, in matter of valuations. When opportunity for discovery of the fraud is presented it must be made use of promptly. "In all cases where it is sought to hold one liable for false representations, the question necessarily arises whether, under all the circumstances, the party seeking relief had a right to rely upon the representations made. In determining this question the representations must be viewed in the light of all the facts of which the party injured had actual knowledge and also such as he might have availed himself of by the exercise of ordinary prudence. If it appears that there were facts and circumstances present at the time the false representations were made sufficient to put the injured party upon his guard or to cast suspicion upon their truth, and he neglected to avail himself of the warning thus given, he will not afterwards be heard to complain, for the reason that his own conduct contributed to his injury." Morel v. Masalski, 333 Ill. 41, 164 N.E. 205, 207. "'The presumption is that, if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, then he seasonably had knowledge of it. Wood v. Carpenter, 101 U.S. 135–143, 25 L.Ed. 807; Bass v. James, 83 Tex. 110, 18 S.W. 336.' * * * 'The rule is well settled that, if it appears that the matters complained of in the equitable suit to vacate the original judgment could have been presented to the trial court in the original proceedings, and brought up by appeal for review, a suit in equity to vacate the judgment would not lie.' Winters Mutual Aid Ass'n Circle No. 2 v. Reddin, Tex.Com.App., 49 S.W.2d 1095, 1096." Lindsey v. Dougherty, Tex.Civ.App., 60 S.W.2d 300, 302.

■ "Equity will not grant relief against a judgment on the ground of newly discovered evidence, where the evidence could have been discovered before, and produced on, the trial by the exercise of care and diligence in searching for it or in interrogating persons cognizant of the facts." 49 C.J.S., Judgments, § 376, p. 750; Robertson v. Freebury, 87 Wash. 558, 152 P. 5; Reed v. Bryant, Tex.Civ.App., 291 S.W. 605.

The cases cited by appellant in support of her stated action, McMurry v. McMurry, 67 Tex. 665, 4 S.W. 357, Ralls v. Ralls, Tex. Civ.App., 256 S.W. 688, and Eldridge v. Eldridge, Tex.Civ.App., 259 S.W. 209, may be easily distinguished. Present in those situations were undoubted concealment of assets and other practices on part of the husband characteristic of extrinsic fraud, whereby complainant was denied the opportunity to fully litigate upon the trial all the rights she was entitled to assert; in other words, "that the plaintiff in error was prevented, by the fraud of the adverse party, from fully presenting all of her case at the time the decree was entered, and so without any want of diligence on the part of herself or counsel." McMurry v. McMurry, supra [67 Tex. 665, 4 S.W. 360].

■ Here appellant was represented by highly adequate counsel who was in no wise subject to defendant's influence or control. Said counsel, knowing the existent atmosphere of discord and distrust between the parties, was duty bound to make full and careful investigation of aforesaid auditor's report and of Bankston's alleged representation of values in connection therewith before approving any settlement on behalf of his client. That such an investigation was made and that both appellant and counsel were satisfied with their own determination of values, is clearly manifested by her voluntary statements and testimony on the previous trial. "It is held generally that one who undertakes to discover the truth of representations made to him is charged with knowledge of everything which a proper investigation would disclose, and is not justified in acting on fraudulent representations merely because they were made to him." 20 Tex.Jur. 62, sec. 36. And rather conclusive of the fact that appellant did not rely on the representations allegedly made was the upward

adjustment of values in the settlement finally consummated; it being based on net property values of more than $100,000 as opposed to the auditor's finding of an $8,-000 deficit in community assets.

As appellee remarks in closing of reply brief, the instant record presents a classic setting for application of summary judgment procedure; and the trial court's action in dismissal of bill for want of equity is in all things affirmed.