Sylvia Huff CARVER et vir, Appellants,

v.

Robert Lee (Bob) HUFF, Appellee.

No. 6515.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 10, 1955.

Rehearing Denied Nov. 7, 1955.

Vickers & Vickers, Lubbock, for appellants.

Crenshaw, Dupree & Milam, Lubbock, for appellee.

NORTHCUTT, Justice.

This majority opinion has been prepared for announcement in lieu of a minority opinion. This was a Bill of Review filed by Sylvia Huff Carver and her husband, Tom Carver, appellants against Robert Lee (Bob) Huff, appellee, praying that the Bill of Review be.granted and that the judgment rendered in the same cause on December 1, 1952 insofar as it pertained to the approval of the property settlement between the parties be set aside; that said original cause be reopened and the court hear evidence as to the character, kind and value of the various community properties, real, personal, or mixed, belonging to said community estate as of December 1, 1952 or thereafter as well as to the nature, kind and character of the various monies, stocks, bonds, choses in action and other claims owned, held or possessed or in any manner vested in either the plaintiff or the defendant at said time and belonging to said community estate and that a fair division thereof be decreed in accordance with the facts as may be determined between the plaintiff and the defendant in said cause.

On December 1, 1952, judgment was entered in Cause No. 21,132 in the 72nd District Court of Lubbock County, Texas, granting Robert Lee Huff, appellee herein,

a divorce from Sylvia Huff and granting Mr. Huff the custody of their three children and confirming the property settlement as theretofore made and entered into by and between Mr. and Mrs. Huff. In this Bill of Review, the only portion of said judgment that Mrs. Sylvia Huff Carver sought to have changed was the property settlement.

After hearing was had upon said Bill of Review, the trial court entered its judgment that Sylvia Huff Carver and husband, Tom Carver, take nothing by said petition for Bill of Review and from such judgment appellants perfected this appeal. The trial court prepared and filed its findings of fact and conclusions of law at the request of appellant and no exceptions were filed to such findings and conclusions.

Appellants present their appeal upon four points of error. The first two points of error were treated as group assignments. It is contended by these assignments that error was committed because the property settlement agreement in question was grossly unfair, unjust and inequitable; that all of the evidence offered upon trial of the petition for Bill of Review showed conclusively that such contract so approved and confirmed by the judgment of December 1, 1952 was grossly unfair, unjust and inequitable and that the plaintiff having failed to offer any substantial proof upon the trial of the divorce case that the property settlement contract was fair; that the trial court erred in denying the petitioner, Sylvia Huff Carver, any relief by her petition for a Bill of Review.

Sylvia Huff Carver, without a single suggestion from anyone and without being influenced by anyone, selected and employed her attorneys to represent her in a divorce and in all matters concerning the original divorce suit filed by Bob Huff and all matters concerning her property settlement. It is undisputed that she was in communication with her attorneys at all times from the time before the divorce suit was filed until after the property settlement was made and entered into and was approved by the court in the divorce suit. She knew when the divorce trial was had and could have been present if she so desired. Her attorney of her own selection was present at the divorce trial and she and her attorney both knew that said property settlement was approved by the trial court and thereby let the trial court know by their silence that they approved such property settlement and in no manner raised any question as to the property settlement. They did not make a motion for a new trial but permitted said judgment to become a final judgment.

■ In the hearing on this Bill of Review, the trial court found, and we think correctly so, that the property settlement between Robert Lee Huff and Sylvia Huff was an unequal division of the community property and gave to Robert Lee Huff substantially more than one-half of the community property. But an inequitable settlement of the property alone is not sufficient to obtain a new trial after a judgment has become final. It is stated by the Comm. of Apps. in the case of Harding v. W. L. Pearson & Co., 48 S.W.2d 964, 965:

"(1) The rule is well established in this state that to obtain a new trial after the expiration of the term something more than that injustice has been done must be shown. It must appear: (1) That the former judgment was not caused by any negligence on him who seeks to set it aside, but that diligence was used to prevent it; (2) that he had a good defense to the action, which he was prevented from making by fraud, accident, or the acts of the opposing party, wholly unmixed with any fault or negligence of his own; (3) that there is good cause to believe that a different result will be obtained by a new trial; and (4) the pleadings and issues of the former suit, and its result, must be set forth distinctly and clearly. It has also been established that bills seeking relief from final judgment, solemnly rendered in the due and ordinary course of the administration of justice by courts of competent jurisdiction, are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted.

Johnson v. Templeton, 60 Tex. 238; Nevins v. McKee, 61 Tex. 412; Sharp v. Schmidt, 62 Tex. 263; Humphrey v. Harrell, Tex.Com.App., 29 S.W.2d 963; Empire Gas & Fuel Co. v. Noble, Tex.Com.App., 36 S.W.2d 451."

Approving the Harding case, the Supreme Court in the case of Crouch v. McGaw, 134 Tex. 633, 138 S.W.2d 94, 96, stated:

"(1-6) A suit instituted for the purpose of setting a judgment aside and to retry the cause is an equitable proceeding, and the grounds on which such suit may be instituted are narrow and restricted. To obtain a new trial after the expiration of the term, something more than injustice must be shown. For a full statement of the essential requirements that must appear before a judgment may be set aside, we cite: Harding v. W. L. Pearson & Co., Tex. Com.App., 48 S.W.2d 964, and cases cited therein; Humphrey v. Harrell, Tex.Com.App., 29 S.W.2d 963; 25 Tex. Jur. p. 585, § 185. Respondents' petition falls far short of meeting the requirements for a bill of review."

The Supreme Court again affirmed the same rule in the case of Kelly v. Wright, Tex., 188 S.W.2d 983, at page 986 where it is stated:

"No rule of law is better settled than the one that a court of equity will not set aside a final judgment in a former action when the failure to have a full and fair presentation of the case therein resulted from the negligence, inadvertence or mistake either of the party seeking the relief or his counsel. Brownson v. Reynolds, 77 Tex. 254, 13 S.W. 986; Johnson v. Templeton, 60 Tex. 238; Smith v. Ferrell, Tex.Com. App., 44 S.W.2d 962; Harding v. W. L. Pearson & Co., Tex.Com.App., 48 S.W. 2d 964; Reynolds v. Volunteer State Life Ins. Co., Tex.Civ.App., 80 S.W. 2d 1087, writ refused; Brannen v. City of Houston, Tex.Civ.App., 153 S.W.2d 676, writ refused."

There is ample evidence in this case to sustain the findings of fact by the trial court that appellant cooperated with appellee in the original divorce suit. It was the appellant that was anxious to secure a divorce and it was appellant that married the very day the divorce was granted. The undisputed record is that she and her counsel had the contract of settlement and went over the same together alone. She acknowledged in said agreement that she had full and complete access to all the records, bank accounts, bank settlements and all records whatsoever pertaining to appellee's business over a period of the past ten years and that she was fully cognizant and aware of all the assets belonging to said estate and long after said divorce decree became final, she accepted money as provided for in said agreement. Schnautz v. Stelfox, Tex.Civ.App., 235 S.W.2d 473. She signed a waiver and entered her appearance in the divorce suit long after the contract was signed by her and knowing the same would be approved by the court. She later signed a supplemental agreement. She with her attorneys signed and approved the judgment in the divorce case which confirmed the property settlement. After the contract was drawn up, it was delivered to appellants' attorneys and appellant and her attorney went over the contract and no one was present but appellant and her attorneys. Mr. Huff was not present nor anyone representing him. Appellant's attorney testified he explained to Mrs. Huff the meaning of the agreement, and he felt, and knew that she did also, that there was more property than that and that they both agreed that they knew there was more and that Mr. Croslin, one of appellant's attorneys, was very much upset about it or so expressed himself that way that it was not an equitable agreement. Mr. Pharr further testified he and his law partner wanted to look further in the matter of her interest in the settlement but she prevented them from doing so. Glass v. Glass, Tex.Civ.App., 199 S.W.2d 678, writ dismissed. We are of the opinion and so hold there was sufficient evidence to support the findings of the trial court that the

appellant was negligent in not presenting her objections at the divorce trial as to the agreement if she had any; that she was not prevented from presenting her defense as to this agreement by fraud, accident or the acts of the opposing party. It is a well settled rule that a trial court findings of fact will be upheld unless they are manifestly erroneous and will be overruled only when they are without any evidence to support them or when they are so against the great weight and preponderance of the evidence as to be manifestly wrong. Boston Ins. Co. v. Rainwater, Tex.Civ.App., 197 S.W.2d 118 and cases there cited. Appellants' first and second assignments of error will be overruled.

By appellants' points of error three and four, she complains that the property settlement agreement in question was illegal and void because it was entered into between the parties for the primary purpose of inducing the appellee to file a suit for divorce so that appellant could marry Tom Carver and, therefore, the property settlement was void. The trial court found that Sylvia Huff was not induced to execute the settlement agreement and to approve the judgment because of her fear of Robert Lee Huff but she was motivated in doing so by her desire to obtain a divorce so that she could marry Tom Carver whom she did marry on the same day the divorce was granted. Under the undisputed record in this case, appellant had already left appellee and employed her attorneys to file a divorce action against appellee and they were living apart prior to entering into said contract. Since they were living apart and in contemplation of an immediate divorce, as in this case, and the appellant had employed her attorneys to file a suit for divorce, they may validly make a contract settling their respective property rights and there would not necessarily be fraud. Since appellant voluntarily appeared and submitted to the jurisdiction of the court and a divorce was granted to appellee and relying upon that divorce and getting married on the same day and the court finding upon sufficient evidence there was no fraud on the part of appellee but that appellant was motivated by her desire to obtain a divorce so that she could marry Tom Carver, then appellant could not attack the property settlement as being illegal and void as presented by her points three and four. Moor v. Moor, Tex. Civ.App., 63 S.W. 347. Appellants' third and fourth assignments of error are overruled.

Judgment of the trial court is affirmed.

PITTS, Chief Justice (concurring).

While I concur in the opinion of affirmance by Justice Northcutt, I believe the trial court's judgment should be affirmed for the additional reasons herein stated.

It should be first observed that the same trial judge heard both the original divorce action and subsequently the bill of review without the aid of a jury in either case.

In the appeal of the latter case now before us, the trial court made and filed its material findings in effect as follows: that at the time the settlement agreement was signed and the divorce action was pending, Sylvia Huff had full knowledge of the values and extent of the community estate, or the means of ascertaining such, and if there was any lack of her knowledge of such, it was the result of her own negligence or that of her attorneys and not a result of fraud or duress brought to bear by appellee herein; that Sylvia Huff was represented by able and loyal attorneys of her own choosing, who fully advised her of her rights in executing the property settlement agreement and that she executed the agreement voluntarily after having been thus fully advised and with knowledge that she was accepting less than one-half of the community estate and that such was not the result of her fear of appellee; and that Sylvia Huff was not prevented by any act or conduct of appellee from fully presenting all the facts in the divorce action or from making a defense there in her own behalf.

The findings of the trial court are not challenged or attacked by appellants either

by assignment of error or otherwise. At any rate the findings seem to be well supported by competent evidence of probative force, some of which was given either by appellant, Sylvia Huff Carver, or by her attorney, Hon. E. G. Pharr. A portion of the settlement agreement found to have been voluntarily executed recites that:

"It being the intention of the parties to this agreement that all of their property, both community and separate, be divided and disposed of by this instrument and it is specifically agreed by and between the parties hereto that any property not listed herein shall and will be the property of the party of the first part and in this connection party of the second part specifically agrees that she has had full and complete access to all the records, bank accounts, bank statements, and all records whatsoever pertaining to plaintiff's business over a period of the past ten years and that she is fully cognizant and aware of all of the assets belonging to said estate and that if any items are omitted that said omission is and was unintentional and that she here and now disclaims any right, title or interest in and to any said items and she further stipulates and agrees that she has had the advice and counsel of her duly constituted attorneys employed by her and that she has had the entire agreement fully explained as well as all of her legal rights explained herein by her duly constituted attorneys and that she executes this instrument on her own volition with full knowledge of the finalty of same and executes same in the absence of any promises, future favors or anything whatsoever on the part of the party of the first part." (S.F. 467.)

Appellants' claims of an unequal division of the property does not necessarily entitle them to relitigate the same matters again under a bill of review. In a petition for a bill of review the trial court is not necessarily concerned about whether or not there was an unequal division of the property since there is no statutory requirement for an equal division of the property. In the recent case of Ingham v. Ingham, Tex. Civ.App., 240 S.W.2d 409, 413 (writ of mandamus denied), this court said in part:

"The trial court in dividing property between the parties in a divorce suit may take into consideration any disparity between the earning powers, the business opportunities, capacity and ability of the parties, and the benefits which the party not at fault would have derived from the estate of the other party through a continuance of their marriage. Liddell v. Liddell, Tex.Civ. App., 29 S.W.2d 868; Farris v. Farris, Tex.Civ.App., 15 S.W.2d 1083; Bagby v. Bagby, Tex.Civ.App., 186 S.W.2d 702; 15 Tex.Jur. 584."

The rule there announced has support in the case of Burguieres v. Farrell, Tex.Civ. App., 85 S.W.2d 952–976, concurring opinion by Justice Brown.

Under the record presented and the law applicable thereto it appears that appellants have not by their pleadings and the proof tendered met the essential requirements for establishing recovery under their petition for a bill of review. Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996; Burguieres v. Farrell, Tex.Civ.App., 85 S.W.2d 952; Garza v. King, Tex.Civ.App., 233 S.W.2d 884 (writ refused); Gray v. Moore, Tex.Civ.App., 172 S.W.2d 746; Bankston v. Bankston, Tex.Civ.App., 251 S.W.2d 768; Sugg v. Sugg, Tex.Civ.App., 152 S.W.2d 446; Smith v. Ferrell, Tex.Com.App., 44 S.W.2d 962; Johnson v. Templeton, 60 Tex. 238, 239.

Concerning appellants' points three and four charging that the settlement agreement is illegal and void because the contract was entered into for the purpose of inducing appellee to get a divorce so his former wife could marry Tom Carver, the evidence reveals conclusively that appellee and his former wife separated on or about August 27, 1952, and the agreement in question was thereafter executed but before the divorce action was heard. The same was executed also after appellant, Sylvia Huff Carver, and her present husband, Tom Carver, had agreed to each obtain a divorce from their

respective spouses and marry each other. Sylvia Huff Carver testified that immediately after she left appellee on August 27, 1952, she drove to Clovis, New Mexico, and immediately thereafter employed Mr. Buzzard, an attorney at Clovis, and the Lubbock law firm of Croslin and Pharr to represent her in the divorce action and the property settlement and that Croslin and Pharr, attorneys of her own choosing, did represent her in such matters. She further testified that she and Tom Carver had already agreed in July of 1952 to get a divorce from their respective spouses and to marry each other. The record reveals that Carver did get a divorce from his then wife and that he and Sylvia Huff married on December 1, 1952, the same being the very day appellee was divorced from her. It appears from the record and we must assume in the absence of a direct finding that the trial court found and concluded that the parties had previously separated and were living apart contemplating a divorce at the time they executed the settlement agreement in question.

It has been held that a husband and wife living apart and contemplating an immediate divorce proceedings and decree, as was shown to be true in the case at bar, may make a valid contract settling their respective property rights between them. Such a contract is not without consideration or against public policy. Scott v. Ft. Worth Nat. Bank, Tex.Civ.App., 125 S.W.2d 356, (writ dismissed); 15B Tex.Jur. 151.

Assuming, however, that the said agreement did violate public policy and should not be enforced, appellant, Sylvia Huff Carver, according to the record before us, is in no position to complain. If the primary purpose of the agreement was to induce appellee to procure a divorce from her so she could marry Tom Carver, such was collusion to which she was a party, for which reason she is not permitted to recover in a subsequent suit on the grounds the agreement was void. Moor v. Moor, Tex.Civ.App., 63 S.W. 347 (writ refused), 25 Tex.Jur. 631, Sec. 219; Hendricks v. Hendricks, 216 Cal. 321, 14 P.2d 83.

For the reasons stated in my opinion appellants' points three and four fail in their purpose.

The appellate courts of this state will presume upon the appeal of any case that the judgment appealed from is correct unless the contrary is made to appear affirmatively from a proper record of the proceedings had in the court below. Smothers v. Gawlik, Tex.Civ.App., 214 S.W.2d 894; 3 Tex.Jur. 424, Secs. 302 and 303; Bennett v. Jackson, Tex.Civ.App., 172 S.W.2d 395; Erback v. Donald, Tex.Civ.App., 170 S.W. 2d 289. In attempting to show affirmatively that an error exists as reflected by the record, appellant must be guided by the rules of law and of equity applicable to the record produced.

For all the reasons shown, in my opinion appellants have failed to affirmatively show any error in the trial court's judgment, for which reason the same must be affirmed.

MARTIN, Justice (dissenting).

Appellants' points one and two, considered in the light of the statement and arguments thereunder, are sufficient to raise the issue that the judgment sought to be reviewed, and settlement agreement upon which the judgment was based, were procured by appellee's fraudulent concealment of community assets from the appellant. This dissent is based on these two points of error.

The following facts are undisputed in the record of the suit for a bill of review. Appellee and appellant were husband and wife and all the property in issue, other than two minor items, is community property acquired during the 19 years appellant and appellee were married. Although appellant employed an attorney, she was sent alone to the office of her husband, an attorney with much experience in the field of litigation and settlement, and in his office the basis was laid for the drawing of the contract of settlement on which the judgment in issue is based. The contract was drawn by appellee's partner in the law business, also an attorney with experience in the field

of litigation and settlement, who participated in the settlement meeting of the parties.

In the settlement agreement, appellee received the sum of $15,000 in cash and personal property estimated at the value of $10,000. With reference to the personal property stated to be of the value of $10,-000, it is noted that entering into said valuation are "valuable oil paintings". In view of the fact that the undisputed record reveals that appellant furnished the canvas and the paints for these "valuable oil paintings", which were painted by a friend of hers in the city of Lamesa, it is a sound presumption that the $10,000 worth of personal property may be regarded with at least a grain of salt as to its valuation in the settlement. It is likewise undisputed that the contract of settlement contained the following representation and statement as placed in the contract by appellee acting through his partner in the field of law:

"1. Current bank deposit accounts, U. S. Government Bonds, Savings accounts in Savings and Loan Associations, consisting of several accounts labeled 'building fund' and 'saving fund', all of the approximate value of $40,000.00 after all 1952 Income Taxes of the parties herein have been paid in full."

The evidence reveals without controversy that the income tax payments as made did not substantially alter the actual amount of cash the parties owned. Other elements of the contract could be quoted to show, without controversy, that the value of all savings accounts and bank accounts was wholly concealed in the drawing of the contract in that the amount of and location of not a single specific account is revealed by such contract.

In the light of the above undisputed facts found in the settlement agreement, an audit of the community estate of the parties as owned at the time of the making of the agreement and rendition of the judgment thereon reveals the total value of personal property and monies alone to be the sum of $273,451.75 which together with real estate valued at $25,250 shows a community estate owned by appellant and appellee of the total value of approximately $298,701.-75. But as to only the money and funds on deposit, the undisputed evidence as disclosed by an audit of the community funds reveals that the community estate of the date of the settlement agreement, September 5, 1952, consisted in fact of the sum of $138,959.54 in cash and on December 1, 1952, the date of the granting of the divorce and division of the property by the court, such cash funds were in the amount of $157,549.43.

Appellant's former attorney appeared as a witness for appellee and testified generally that he and appellant felt and agreed they knew there was more property but he nowhere testified that either he or appellant knew there were more cash funds on deposit than stated in the contract. Such attorney's knowledge of the cash assets of the estate is fully revealed by the fact that such attorney, as a witness for appellee, testified that he drew a supplemental contract under which the $15,000 that appellant was to receive in cash was to be payable in three $5,000 installments over a period of several months. The drawing of this supplemental contract is unexplained in the record and the only reasonable presumption that can be drawn from such instrument is that appellee's witness at the time of the drawing of the supplemental contract for appellant did not believe there were sufficient funds in the estate to pay the lump sum of $15,000 due the appellant under the agreement.

When the contract is viewed in the light of appellee's representation that the community estate consisted of only $40,000 in cash and Government Bonds when, in truth and in fact, it consisted of $157,549.43 in cash funds alone and $12,000 in Government Bonds, the contract itself under the undisputed evidence reveals the fraudulent concealment of community assets in the drawing of the same. Although the contract of settlement mentions the fact that the parties owned U. S. Government Bonds,

without stating the value thereof, these bonds of the value of $12,000 were not specifically divided in either the contract or the judgment of division but were retained by appellee.

In addition to the above undisputed facts, one of the most revealing elements of fraudulent concealment, which is likewise indisputable, is the fact that the contract of settlement does not even mention outstanding legal fees and claims and unpaid judgments as owned by the community. But, when paragraph 5 of the contract of settlement, awarding to appellee his law library and all office furniture and equipment in the law offices situated in Lubbock and Lamesa, was brought forward into the judgment of the court, which judgment was likewise drawn by appellee's law partner, it is noted that the following clause was tacked onto paragraph 5 of the settlement agreement:

> "together with the proceeds of any and all outstanding legal claims and unpaid judgments, of whatever nature and description whether paid, unpaid or in the process of payment, regardless of nature and amounts."

This neat addition in the judgment to paragraph 5 of the contract vested in appellee the sum of $91,902.32 in community legal fees not discussed or even mentioned in the settlement agreement.

It is not believed that further undisputed evidence is required to establish the fraudulent concealment of community assets by the husband in the drawing of the contract of settlement and the judgment of the trial court based thereon. It is noteworthy that the entire contract and judgment based thereon, while failing to vest a single item of cash in specific amount or as to location thereof seeks to vest any and all such items in the appellee by vague general allegations—under the contract appellee clearly takes all and reveals nothing.

This dissent rests on the opinion, based on the undisputed record, that appellant was deprived of her community estate solely by reason of appellee's fraudulent concealment from her of the true value thereof. It is a correct principle of law that the court can adjudicate an uneven division of property between a husband and wife but no legal ground exists for the uneven division of property herein shown in the light of the fact that appellant has practically no earning power while appellee's yearly gross earnings in the field of law practice are of the approximate amount of $200,000.

The above undisputed facts as found in the record of the trial of appellants' application for a Bill of Review are sufficient to require the granting of the same under the following rule:

> "* * * the husband is by law the manager of the community estate, and a trust relationship exists between him and the wife. His representations as to the nature and extent of the community estate, if false, are treated as a species of extrinsic fraud, justifying the modification of the property settlement upon the theory of an implied trust, in accordance with applicable equitable principles." Brownson v. New, Tex.Civ.App., 259 S.W.2d 277, 281 [9–12].

> "The right of a party to maintain an action to litigate rights as to community property when the fraud of the other party has prevented a litigation of such rights in a prior proceeding is well established." Novy v. Novy, Tex.Civ. App., 231 S.W.2d 780, 782 [2].

The law governing the issue as to negligence is revealed in Bankston v. Bankston, Tex.Civ.App., 251 S.W.2d 768, at page 773, paragraph 3, wherein it is decreed:

> "* * * 'that the plaintiff in error was prevented, by the fraud of the adverse party, from fully presenting all of her case at the time the decree was entered, and so without any want of diligence on the part of herself or counsel.' "

See also Swearingen v. Swearingen, Tex. Civ.App., 193 S.W. 442, Syl. 15–16–17, writ

refused; Eldridge v. Eldridge, Tex.Civ. App., 259 S.W. 209, Syl. 7–10; Ralls v. Ralls, Tex.Civ.App., 256 S.W. 688, Syl. 11–12; McMurry v. McMurry, 67 Tex. 665, 4 S.W. 357; Wright v. Wright, 7 Tex. 526.

The Bill of Review should have been granted.