William RISK, Appellant,

v.

Nabeha Ann RISK, Appellee.

No. 18280.

Court of Civil Appeals of Texas, Fort Worth.

June 19, 1980.

Rehearing Denied July 17, 1980.

Garrett & Burkett, and John B. Garrett, Fort Worth, for appellant.

Simon & Simon, and W. Weir Wilson, Fort Worth, for appellee.

## OPINION

HUGHES, Justice.

William Risk filed a bill of review to set aside his divorce decree which incorporated a property settlement and a contractual alimony agreement. During pendency of the bill of review, the husband did not make full payment of the stipulated amounts in the two agreements and his wife counterclaimed for the deficiency. From a judgment which denied the relief sought by the husband and granted judgment for the wife in the amount of the deficiency, the husband has appealed.

We affirm.

Risk and his wife, Nabeha Ann, entered into a property settlement agreement and an agreement which provided for contractual alimony. The agreement awarded a house owned by the couple to Mrs. Risk. The house, encumbered with a mortgage, had a considerable equity. Risk contends that he agreed to pay Mrs. Risk $3,000.00 per month contractual alimony for the upkeep and maintenance of the house and to assist her in meeting the payments on the house mortgage for which she assumed sole personal responsibility.

Also, Risk contends that he agreed to pay $1,000.00 per month child support to allow the couple's children to continue attending a private school. The amount partially reflected the school's tuition. At the time the two agreements were made, Mrs. Risk was represented by counsel who contacted Risk and attempted to persuade him to accede to the terms of the agreements. Risk eventually agreed, but before doing so, he had the agreements reviewed by his own attorney and later by his tax counsel. Despite misgivings of his counsel, Risk signed the agreements and did not challenge them when they were incorporated into a decree in an uncontested divorce proceeding.

Shortly after the decree was rendered, Mrs. Risk withdrew the children from the private school and sold the house. She moved into a smaller house she had purchased, realizing the accumulated equity in the larger house. Risk claims that this action decreased Mrs. Risk's monthly income need by $1,000.00. He contended that he had been misled by fraud on the part of Mrs. Risk and her attorney. His theory is that the property settlement agreement and the contractual alimony agreement incorporated into the divorce decree were procured by intrinsic fraud.

We do not find it necessary to enter into a lengthy discussion on Risk's allegations of fraud. This case is very similar to a recent case decided by this court, *Chapman v. Chapman*, 591 S.W.2d 574 (Tex.Civ. App.—Fort Worth 1979, no writ), and a prior case relied on in *Chapman*, which was *Bankston v. Bankston*, 251 S.W.2d 768 (Tex. Civ.App.—Dallas 1952, mand. overr.). For the reasons stated in *Chapman* and *Bankston*, which we hold to be controlling here, we affirm the judgment of the trial court. Risk essentially complains of intrinsic fraud in his inducement, which he argues was the basis for his acquiescence in entering into the property settlement and contractual alimony agreements. In order to set such agreements aside, allegations of intrinsic fraud are insufficient. *Chapman v. Chapman, supra* at 577; *Bankston v. Bankston, supra* at 772.

■ At most, Risk was self deceived. Risk had the assistance of his own counsel prior to entering into any agreement made in contemplation of his divorce, and this alone would be sufficient to deny him the relief he presently seeks by way of a bill of review. We note, however, that not only did Risk have the assistance of his own counsel, he decided to consciously disregard the advice of one of those attorneys. If nothing else, Risk is estopped from claiming fraud at this time under the facts and circumstances of this case. In addition, had Risk desired to protect himself from the alleged fraud, he could have taken such precautions as contractually agreeing to make the monthly mortgage payment for Mrs. Risk or to pay the children's tuition directly to their school, and had such provisions incorporated into the divorce decree.

■ Moreover, when fraud is based on a promise to do something in the future, it is necessary to allege and prove that the promise was made with no intention of keeping it. *Motors Ins. Corporation v. Freeman*, 304 S.W.2d 580 (Tex.Civ.App.—Dallas 1957, no writ); *Hill v. Thomas*, 140 S.W.2d 875, 877 (Tex.Civ.App.—Beaumont 1940, writ dism'd, jdgmt cor.). In this case, Risk was required to show that Mrs. Risk did not intend to keep a promise that she would keep the house and that she would continue to send the children to a private school. This was not shown.

Finally, we take judicial notice of the tax advantages of which Risk availed himself when he chose to pay contractual alimony and child support. The contractual alimony he agreed to pay is deductible from income for federal income tax purposes. 26 U.S.C.A. secs. 71(a)(1) and 71(d) (1967). The contractual child support arrangements also appear to have been designed to be deductible, even though child support is not normally deductible. 26 U.S.C.A. sec. 71(b) (1967). The child support payments could arguably have been treated as "installment payments" of a lump sum settlement of Risk's marital obligations, which are deductible. The payment period Risk agreed to was for a duration of 121 months, one month longer than the ten year period imposed by the International Revenue Code which allows an ex-spouse to take such payments as deductions from income as an "installment payment". 26 U.S.C.A. secs. 71(a)(1) and 71(c)(1) (1967). See also Clark, Law on Domestic Relations, sec. 14.12 p. 481–87 (1968). It would be unfair to allow Risk, after having taken advantage of the benefits of the income tax laws, to complain now that he could have gotten a better deal if he had been more diligent at the time he originally sought to take a tax advantage.

■ Risk had a valid complaint concerning the manner in which the trial court took certain evidence during the bill of review trial. Risk called as a witness a friend of Mrs. Risk who had advised her during the divorce preparations regarding financial matters, and attempted to elicit certain information from the witness. When the witness became reluctant to testify due to the sensitive nature of the material he was being called upon to disclose, he announced his misgivings to the judge. At that time, the judge recessed the court and reconvened it in his chambers. The judge allowed only the witness, the court reporter and himself to be present at that time, and further evidence was taken. This evidence was then sealed. After the short session in chambers, open court was reconvened, whereupon the witness continued testimony in open court.

The record shows that the testimony given in chambers and the later testimony given in open court were substantially the same. Even though Risk complains that this practice denied him the right of cross examination of a witness, we hold the action of the trial court to be harmless under Tex.R.Civ.P. 434 and overrule any complaints relative to this testimony and the method in which it was taken. In order to constitute reversible error, the action of the trial court must have been calculated to and probably did result in the rendition of an improper judgment. That was not true in this case. We seriously doubt that the judge intended for his actions to result in the rendition of an improper judgment, but

even if he did, the record shows that there was other evidence placed in the record to the same effect as that taken in chambers to support the judgment which was entered. We must comment however that it was incorrect for the trial court to exclude counsel when he took the evidence in question.

We have carefully considered each point of error raised by Risk, and although each point is not specifically addressed, each point has been separately considered and is overruled. The judgment of the trial court is affirmed.