**Virginia Lou Wilkinson MONTGOMERY, et al., Appellants,**

v.

**Virginia McEntire KENNEDY, et al., Appellees.**

No. 08–82–00029–CV.

Court of Appeals of Texas, El Paso.

March 16, 1983.

Rehearing Denied May 4, 1983.

Eugene Clements, Porter & Clements, Houston, for appellants.

John B. Holstead, Paul D. Clote, Vinson & Elkins, Robert E. Morse, Jr., Houston, Sam Sparks Grambling, Mounce, Sims, Galatzan & Harris, El Paso, for appellees.

Before STEPHEN F. PRESLAR, C.J., and OSBORN and SCHULTE, JJ.

## OPINION

OSBORN, Justice.

This is an appeal from a summary judgment denying a bill of review filed to set aside an earlier judgment entered between these same parties. We affirm.

Jack B. Wilkinson of Midland died in 1969, and his probated will created three testamentary trusts which were to be funded from his residuary estate. His wife, Virginia, was the life beneficiary of the first trust which was to be funded with one-half of the residuary estate. His two children, Virginia Lou and Jack, Jr., were the life beneficiaries of the other two trusts and they were to each be funded with one-fourth of the residuary estate. Virginia Lou's three children were holders of the remainder interest under her trust. The wife and son were named as Independent Executrix and Executor of the will and as Trustees of the three trusts.

When the trusts were never funded and no distributions paid to her, Virginia Lou in 1974, through her attorney, began negotiations to sell her trust interest and her stock in Wilkinson Realty Company, a family owned company, for cash to her brother. Apparently, some hard feelings had developed between the family members after the death of Jack, Sr. and all parties were represented by counsel in an effort to divide the estate.

In late 1974, a settlement agreement and release was prepared providing that Virginia Lou and her children would receive $350,000.00 for their share of her father's trust and for the realty company stock, and the trust would be terminated and her mother and brother would be released from all other claims. In order to complete the settlement and have a judgment binding the minor children, a suit was filed by Virginia and Jack, Jr. in December, 1974, in the 171st District Court seeking a court order approving the settlement agreement, terminating the three trusts and dividing the sum paid between Virginia Lou and her children. Virginia Lou and the children answered and filed a counterclaim for damages and a Third Party Action against Wilkinson Realty Company. A hearing was set for December 30, 1974, but Virginia Lou became concerned about the value of some mineral interest owned by the estate and, after she refused to proceed with the hearing, it was cancelled. After further review of the values with a geologist of her choice, she decided to proceed with the settlement, and following a hearing on January 24, 1975, a judgment was entered approving the settlement agreement between the parties and finding that Jack, Jr. had purchased Virginia Lou's interest in the estate for $197,500.00, ordering that $22,500.00 of that amount be paid into the registry of the court for the minor children, and further approving the Wilkinson Realty Company purchase of Virginia Lou's stock for $152,500.00.

In the fall of 1975, Virginia Lou learned of oil and gas discoveries on the ranch in Sterling County where the estate owned mineral interest. In January, 1977, the Appellants, Virginia Lou and her children, filed a bill of review action and they filed an amended petition in October, 1979, for a bill of review, declaratory relief and an accounting. Appellants sought to set aside the judgment entered in January, 1975, along with the settlement agreement and release, and to restore title to all interest in the Appellants and for reinstatement of the testamentary trusts, plus an accounting on the interest acquired from Appellants. Appellees answered and filed a motion for summary judgment which was granted. This appeal is from that judgment.

The Appellants present a single point of error asserting the trial court erred in granting the motion for summary judgment. They present three basic arguments contending that (1) fact issues exist as to whether the trial court had jurisdiction to enter the 1975 judgment, (2) fact issues exist as to whether Appellants are entitled to a statutory bill of review and (3) fact issues exist as to whether Appellants are entitled to an equitable bill of review. In passing on these contentions, we recognize that a defendant moving for a summary judgment assumes the burden of showing as a matter of law that the plaintiff had no cause of action against him. *Citizens First National Bank of Tyler v. Cinco Exploration Company,* 540 S.W.2d 292 (Tex.1976). In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movants must be taken as true and every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor. *Wilcox v. St. Mary's University of San Antonio, Inc.,* 531 S.W.2d 589 (Tex.1975).

The Appellants contend there was no justiciable controversy between the parties when the "friendly suit" was filed in 1974 and judgment entered in 1975. It is asserted that the judgment was nothing more than a judicial affirmance of a written settlement agreement and release between the parties which had disposed of all issues and left no controversy pending at the time suit was filed. Such contentions overlook the fact that Appellants filed a counterclaim seeking damages in the amount of $600,-000.00 in lieu of their trust assets. If there was no real controversy, there was no reason for Virginia Lou to refuse to participate in the scheduled hearing in December, 1974, and insist on contacting a geologist of her choice prior to accepting the terms of the settlement agreement.

Article 7425b–24, Tex.Rev.Civ. Stat.Ann. (Vernon 1960), in subsection A, provides:

> The district court shall have original jurisdiction to construe the provisions of any trust instrument; to determine the law applicable thereto; the powers, responsibilities, duties and liability of trustee; * * *.

The nature of the suit is a question of law to be determined by the court solely from the facts alleged in the petition and counterclaim and the rights asserted and relief sought. *Cogdell v. Fort Worth National Bank,* 537 S.W.2d 304 (Tex.Civ.App.—Fort Worth 1976, writ dism'd). In addition to its jurisdiction under the above quoted provision of the Texas Trust Act, the trial court had jurisdiction under the Texas Declaratory Judgment Act, Article 2524–1, Tex.Rev. Civ.Stat.Ann. (Vernon 1965), to construe the express provisions of the will. *Magids v. American Title Insurance Company, Miami, Florida,* 473 S.W.2d 460 (Tex.1971). We conclude the trial court had jurisdiction of the suit filed in 1974 and in which the 1975 judgment was entered.

But, if such holding is not correct, the Appellants are estopped to assert otherwise. In *Spence v. State National Bank of El Paso,* 5 S.W.2d 754 (Tex.Comm'n App. 1928), the court noted that where a party invoked the jurisdiction of the court to appoint a receiver of their property, they could not thereafter be permitted to question the validity of such appointment for the want of jurisdiction. The court said:

To permit one to invoke the exercise of a jurisdiction within the general powers of a court and then to reverse its orders upon the ground that it had no jurisdiction would be to allow one to trifle with the courts. The principle is one of estoppel in the interest of a sound administration of the laws whereby the regularity or even validity of an act procured by one himself cannot be raised—not that the act is valid, for it may not be, and estoppel does not make valid the thing complained of, but merely closes the mouth of the complainant.

The holding in the *Spence* case was followed in *Gaspard v. Gaspard,* 582 S.W.2d 629 (Tex.Civ.App.—Beaumont 1979, no writ); *Garza v. Perez,* 403 S.W.2d 849 (Tex. Civ.App.—Corpus Christi 1966, no writ); and *Dutchover v. Dutchover,* 334 S.W.2d 569 (Tex.Civ.App.—El Paso 1960, no writ). Having filed a cross-claim to recover money damages and having been paid the amount agreed upon in the court-approved settlement agreement, including the amount ordered paid into the registry of the court for the minor children, the Appellants are estopped to question the jurisdiction of the trial court.

We now turn to the issue of whether material facts exist as to whether Appellants are entitled to a statutory bill of review. The contention is made that Appellants are entitled to a bill of review under Section 31 of the Probate Code upon a showing of any substantial error by the trial court in the original action. They contend that they are not bound in the statutory bill of review to the strict requirements of an equitable bill of review. *Jackson v. Thompson,* 610 S.W.2d 519 (Tex.Civ. App.—Houston [1st Dist.] 1980, no writ); *Hamilton v. Jones,* 521 S.W.2d 350 (Tex.Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). We agree with these contentions, but do not find any substantial error by the trial court in the original action. In the Appellants' brief there is not a single trial court error specified as a basis for the granting of a statutory bill of review. None of the cases cited by Appellants can be relied upon as supporting a contention of error by the trial court in this case. The trial court had jurisdiction of the subject matter and the parties, and there was no procedural error which requires reversal. There is no fact issue with regard to a statutory bill of review.

The last and most difficult issue concerns Appellants' right to an equitable bill of review and whether a fact question exists as to this phase of the case. To be entitled to an equitable bill of review to set aside an earlier final judgment, a party must allege and prove: (1) a meritorious claim or defense, (2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own. *Baker v. Goldsmith,* 582 S.W.2d 404 (Tex.1979); *Petro-Chemical Transport, Inc. v. Carroll,* 514 S.W.2d 240 (Tex.1974); *Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996 (1950). On the other hand, a defendant who moves for summary judgment in a bill of review action has the burden of disproving at least one of the elements for bill of review, as a matter of law. *Gonzalez v. Mann,* 584 S.W.2d 928 (Tex.Civ.App.— Houston [14th Dist.] 1979, writ ref'd n.r.e.).

In this case, it is alleged by Appellants that as beneficiaries of a testamentary trust which was never funded, there was fraud upon the part of Jack, Jr., a trustee, in that he failed to disclose valuable information to Appellants and their attorneys at the time negotiations were undertaken to arrive at values of certain properties and settle the claim of Appellants. It seems clear that at the time of the settlement negotiations, which were conducted prior to the entry of the 1975 judgment, Jack, Jr. was in a fiduciary relationship with his sister since he was a trustee of the testamentary trust of which she was the life beneficiary. *Texas Bank and Trust Company v. Moore,* 595 S.W.2d 502 (Tex.1980); *Humane Society of Austin and Travis County v. Austin National Bank,* 531 S.W.2d 574 (Tex. 1975).

One occupying a fiduciary relationship to another must measure his con-

duct by high equitable standards and is under a duty to make a full disclosure of all facts and circumstances concerning his dealings with the trust assets. *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corporation,* 138 Tex. 565, 160 S.W.2d 509 (1942). The fact that the relationship between the brother and sister had become strained did not change the duty Jack, Jr. owed to Virginia Lou to make a full disclosure. *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786 (1938); *Kunz v. Huddleston,* 546 S.W.2d 685 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

We conclude that there is evidence that Jack, Jr. did not make a full disclosure as was required of him while acting in a fiduciary relationship with his sister. There was a failure to disclose all information available concerning the value of mineral rights under the Sterling County ranch. In April, 1974, Appellees signed a lease agreement with American Quasar Petroleum Company for the purchase of a lease on a certain block of land in Sterling County for a bonus of $255,772.40 with an option to lease three other blocks for an additional aggregate bonus of $1,117,749.75. The lease was made May 1, 1974, and provided for a one-fifth royalty. The total bonus to be earned by the estate for its interest under the leases would be $171,690.30. The sum of $100,894.83 was paid to the estate by the end of 1974. Apparently, an additional $70,795.47 was paid in 1975. A well was commenced on the leased lands in December, 1974, and completed about January 19, 1975. Jack, Jr. did not disclose these facts to Virginia Lou or her attorneys.

Perhaps the most important issue in the case, and one which has a controlling effect, is whether the fraud was extrinsic or intrinsic. The court in *Hagedorn* said:

Fraud in its relation to attacks on final judgments is either extrinsic or intrinsic. Only extrinsic fraud will entitle a complainant to relief because it is a wrongful act committed "by the other party to the suit which has prevented the losing party either from knowing about his rights or defenses, or from having a fair opportunity of presenting them upon the trial. Such, for instance, as where he has been misled by his adversary by fraud or deception, did not know of the suit, or was betrayed by his attorney. In other words, fraud which denied him the opportunity to fully litigate upon the trial all the rights or defenses he was entitled to assert. 'Intrinsic fraud' in the procurement of a judgment is not ground, however, for vacating such judgment in an independent suit brought for that purpose. And within that term is included such matters as fraudulent instruments, *perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed."* *State v. Wright,* Tex. Civ.App., 56 S.W.2d 950, 952, which was cited with approval and substantially quoted by this court in *Crouch et al. v. McGaw,* 134 Tex. 633, 138 S.W.2d 94.

In this case, the real issue was whether the Executrix and Executor, Appellant's mother and brother, had breached their duty to Virginia Lou to fund her trust and, if the trust was to be terminated, how much should be paid to her when the trust was terminated and the trustees relieved of their duty to the beneficiaries who are the Appellants in this case. The Appellees did nothing to prevent Virginia Lou from presenting her claim against them in either their individual or fiduciary capacity. She was represented by imminently well-qualified counsel who retained an experienced certified public accountant to assist him in reviewing tax returns and other materials. She consulted, herself, with a geologist concerning mineral interest values. She testified at the final hearing that she was satisfied with the settlement agreement and wanted the court to approve it.

The court in *Rylee v. McMorrough,* 616 S.W.2d 649 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ dism'd), affirmed a summary judgment in an equitable bill of review case where a wife sought to set aside a property settlement agreement entered in a divorce case because of the alleged fraudulent acts of her former husband in misrep-

resenting property values. The court noted that to vacate the judgment appellant was required to show extrinsic fraud and it then concluded:

We find that the trial court properly granted the summary judgment. Appellant failed to establish that the circumstances surrounding entry of the divorce decree and approval of the property settlement agreement rise to the dignity of extrinsic fraud. The cases establish that misrepresentations such as those allegedly made regarding the property and its value constitute intrinsic fraud. *Bankston v. Bankston,* 251 S.W.2d 768 (Tex.Civ.App.—Dallas 1952, mand. overr.) Further, appellant did not assert that she was in any way prevented from obtaining her own counsel. She admits to having signed the property settlement agreement and the waiver of citation. We fail to see under these circumstances how she can assert that she was prevented from a proper presentation of her case due to *no* fault or negligence of her own. Her bill of review must fail.

Very similar is the holding in *Chapman v. Chapman,* 591 S.W.2d 574 (Tex.Civ.App.—Fort Worth 1979, no writ). Here, again, the appellate court affirmed a summary judgment in a bill of review case where a wife claimed her former husband was guilty of fraud and had made misrepresentations as to property values in a prior divorce case. The court in rejecting her claim said:

Addressing the wife's allegations of fraud, we hold her complaint to have been based solely upon intrinsic fraud of her husband. In order to vacate the judgment, the wife must fail unless she can show extrinsic fraud. As in *Bankston,* 251 S.W.2d 768, 772, the fraud alleged at most relates to untruths which misled the wife into acquiescence and approval of an unjust division of property. Furthermore, assuming presentment that misrepresentations were made by the husband upon which the wife relied, the misrepresentations obviously bore only on matters at issue in the former trial (or which could have been at issue on that trial) and therefore amounted to no more than intrinsic fraud.

*Also see: Raney v. Mack,* 504 S.W.2d 527 (Tex.Civ.App.—Texarkana 1973, no writ); *Neill v. Neill,* 386 S.W.2d 642 (Tex.Civ.App.—Austin 1965, writ dism'd); and *Bankston v. Bankston,* 251 S.W.2d 768 (Tex.Civ.App.—Dallas 1952, mand. overr.), where the court wrote:

In the first place, the fraud here portrayed is intrinsic in kind rather than extrinsic. See for definition and discussion of the terms, *Crouch v. McGaw,* 134 Tex. 633, 138 S.W.2d 94; *Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996. Plaintiff's bill, in allegations, discloses no situation where W.O. Bankston, by acts or statements, prevented a real litigation or investigation of her rights or from otherwise obtaining a fair hearing of her claim to an equality of estate. The fraud at most relates to untruths which misled both plaintiff and counsel into acquiescence and approval of an unjust division of property. If misrepresentations were made and appellant relied thereon, they bore either actually or potentially on the matters at issue in the former trial and thus tantamount to no more than intrinsic fraud.

█ In our case, there is no fact issue raising extrinsic fraud and the summary judgment evidence shows conclusively that only intrinsic fraud is involved in this case. Point of Error No. One is overruled.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

Virginia Lou Montgomery and her children have filed a Motion for Rehearing and now urge that we should grant the motion and follow the holding in *Morrison v. Rathmell,* 650 S.W.2d 145 (Tex.App.—Tyler, 1983). We conclude that decision is not applicable to the facts in this case, and the Motion for Rehearing is denied.

In the Morrison case, the husband set an amount as the value of the insurance companies formed during the marriage. He would not agree to an appraisal and advised

his wife that the stated amount would not be reexamined. He then forced a settlement based on his value of the Rathmell companies. The settlement was accepted because of the coercive conduct of the husband who threatened to abandon the companies and establish a new business unless the wife accepted his valuation figure.

In our case, everyone knew that the properties which made up a substantial part of the estate and the stock of the building company did not have exact values. Virginia Lou was advised by her attorneys that her interest could possibly have a value as high as $1,100,000.00. They also advised her that the down-side values could be considerably less. At one time her attorneys offered to settle her claim for $500,000.00. Apparently, about the same time, Jack's attorney recommended to him a payment of $200,000.00. But, even after a settlement figure of $350,000.00 was agreed upon, there was no coercion by Jack to get his sister to complete the settlement. In fact, at the first hearing on the settlement agreement, Virginia Lou was not totally satisfied as to all the values and the hearing was postponed until she could consult with an expert of her choosing. Only after obtaining additional advice did she decide to proceed with the settlement.

Unlike Mrs. Morrison, Virginia Lou Montgomery was not prevented from fully exercising all her rights to determine and receive what she considered a fair value for her interest by an adverse party.

Appellant's Motion for Rehearing is overruled.