John A. RATHMELL, Appellant,

v.

Mary Ann Rathmell
MORRISON, Appellee.

No. C14–85–623–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 26, 1987.

Robert J. Piro, Pamela E. George, Houston, for appellant.

Tom Alexander, John F. Nichols, Houston, for appellee.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

JUNELL, Justice.

John A. Rathmell appeals a judgment rendered against him in his former wife's bill of review attack on their divorce decree and property settlement agreement. Following a trial, judgment was rendered in favor of appellee Mary Ann Rathmell Morrison and against appellant John A. Rathmell in the amount of $3,000,000. Appellant brings seventeen points of error. We reverse and remand.

This case has a long and somewhat complex history. After more than twenty years of marriage an action for divorce was filed. The parties negotiated a property settlement agreement that was approved by the court and incorporated in the divorce decree dated October 1, 1975. Among the items disposed of in the divorce decree/property settlement agreement were community-owned shares of stock in two corporations, Rathmell & Co. and John Rathmell & Company, Inc. These two corporations were insurance agencies engaged as independent agents in the business of selling general insurance. John Rathmell was the key man in the growth and development of the companies for many years. The community-owned shares of stock in the two corporations were awarded to appellant, subject to a remainder interest set aside for the children of the parties in approximately forty percent of the community-owned shares in one of the corporations. In October 1977, appellant sold the insurance companies for substantially more than the book value that was used in the settlement agreement. Appellee thereafter filed an equitable bill of review, alleging that prior to the divorce appellant had misrepresented the value of the companies, failed to disclose to her negotiations for sale of the companies occurring before the divorce, and by certain threats coerced her into signing the settlement agreement.

The trial court originally granted appellant's motion for summary judgment on the bill of review; however, that judgment was reversed by the Tyler Court of Appeals. *Morrison v. Rathmell,* 650 S.W.2d 145 (Tex.App.—Tyler 1983, writ dism'd).

On remand the trial of the cause was bifurcated. The first portion, tried to a jury in November 1984, was to decide whether appellee had been prevented from asserting her claims by appellant's fraud, failure to disclose material facts and coercion. The jury verdict favored appellee. The second part of the trial, which dealt with identification, evaluation and division of the property, began in March 1985. This portion was tried to the court. After the trial's conclusion the court rendered judgment in favor of appellee and against appellant in the amount of $3,000,000. The judgment also contained the following provision: "As to all other matters, the previous divorce decree and property settlement agreement of October 1st, 1975 remains in effect."

■ In his first point of error appellant contends that in the bill of review proceeding the trial court did not have subject matter jurisdiction to set aside the prior divorce decree because appellee and her attorney had appeared in court in the divorce case and approved the divorce decree that was entered. Appellant argues that a bill of review is for the purpose of redressing injustices resulting from default judgments. He concedes there are limited exceptions to this rule but suggests that appellee does not fall within any of the exceptions. We do not agree with appellant's contentions. The Texas Supreme Court recently reversed a summary judgment granted against a bill of review plaintiff who had approved an agreed judgment, based on a compromise settlement agreement, at a hearing before the court at which the plaintiff and her attorney were present. *Montgomery v. Kennedy,* 669 S.W.2d 309 (Tex.1984). The court held that summary judgment in the bill of review proceeding was improper even though the plaintiff and her attorney had personally appeared in court and approved the judgment rendered in the original suit. Similarly, the Corpus Christi Court of Appeals has held that a property settlement between the parties in a divorce action and an agreed judgment incorporating that agreement are subject to being set aside in a bill

of review proceeding because of extrinsic fraud. *Kessler v. Kessler,* 693 S.W.2d 522, 525 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *citing McMurry v. McMurry,* 67 Tex. 665, 4 S.W. 357 (1887); and *O'Meara v. O'Meara,* 181 S.W.2d 891 (Tex. Civ.App.—San Antonio 1944, writ ref'd). We, therefore, hold the trial court had subject matter jurisdiction and overrule appellant's first point of error.

■ Appellant's second, third and fourth points of error challenge the validity of the court's judgment on the bill of review and the sufficiency of appellee's pleadings. The judgment under consideration reads in pertinent part as follows:

On March 18, 1985, the above-styled cause was called on for trial. Both parties appeared with counsel and waived trial by jury on all remaining issues. Thereupon both parties introduced evidence until all sides had rested and closed. After having heard all of the evidence and argument of counsel, the court took the case under advisement and on April 19, 1985, in open court, announced its judgment as follows:

Judgment is hereby ordered, adjudged and decreed for the Petitioner-Plaintiff, Mary Ann Rathmell Morrison in the amount of Three Million Dollars ($3,000,-000) against Respondent, John A. Rathmell. This judgment is secured by lien against any bank account or accounts in Respondent's name or subject to his control or any other financial institution or institutions wherein there are any assets in Respondent's name or subject to his control, including but not limited to any cash, certificates of deposit, bonds or stocks in his name or subject to his control. As to all other matters, the previous divorce decree and property settlement agreement of October 1st, 1975 remains in effect.

Appellant argues that the bill of review judgment does not set aside the divorce decree, that the 1975 divorce decree remains in full force and effect and that the bill of review judgment violates Rule 301's prohibition against more than a single final judgment. Tex.R.Civ.P. 301. In support of his position appellant first cites *Bridgman v. Moore,* 143 Tex. 250, 183 S.W.2d 705 (1944). That case is not on point. There the supreme court held only that a motion to set aside a judgment that had become final because a motion for new trial had not been filed timely was insufficient as a bill of review. Bridgman's motion to set aside the judgment had not been filed as an original proceeding, and in the motion Bridgman merely complained of errors alleged to have occurred in the course of the trial. Such is clearly not the case here. Appellee properly challenged the divorce decree/property settlement agreement through a bill of review which is an independent cause of action.

Appellant also relies on *Kessler v. Kessler,* 693 S.W.2d 522 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). There Robert and Ethel Kessler were divorced in 1982. In 1983 Ethel filed a bill of review alleging that Robert had concealed community funds in a bank account in the name of another person. Ethel did not learn of the account until seven months after the divorce had become final. The trial court rendered a bill of review judgment awarding Ethel a money judgment against Robert. The court of appeals dismissed the appeal, reasoning that the bill of review judgment did not set aside the original divorce decree, did not divide all of the community property, and therefore, did not dispose of the entire controversy. Since the judgment failed in these respects, it was not a final judgment and was not subject to appeal.

■ We think there are distinctions between *Kessler* and the case now before us. The Kessler judgment did not refer in any way to the divorce decree and property settlement agreement. In the instant case the judgment provides: "As to all other matters, the previous divorce decree and property settlement agreement of October 1st, 1975 remains in effect." This last-quoted provision in the judgment, coupled with the money judgment for $3,000,000 in favor of Mary Ann, is equivalent to setting aside the divorce decree and property division under the property settlement agree-

ment and substituting therefor a new judgment in which each party is awarded the same properties as were awarded in the original decree and settlement agreement and, in order to make the property division just and right, Mary Ann is awarded a $3,000,000 judgment against John. The original divorce decree and settlement agreement could have provided for just such a disposition of the parties' community property, and there is no reason why the same result cannot be achieved in the bill of review judgment.

However, this case must be reversed and remanded for a new trial on other grounds. In order to eliminate any question in this regard, it is suggested that following a retrial of this case, and assuming a similar result, it would be preferable for the trial court's judgment to specifically set aside the original divorce decree and property division in so far as attacked and then specifically set forth the terms of the new property division, even if those terms are identical with the terms set out in the original decree, plus any appropriate money judgment.

■ In point of error four appellant also argues that appellee's bill of review pleadings did not ask that the decree of divorce be set aside but asked that only the property settlement agreement be set aside. We hold the pleadings were sufficient. Appellee specifically pled that "the SETTLEMENT AGREEMENT (Exhibits A and B) be set aside and a new judgment properly adjusting the equities be substituted therefor...." Exhibits A and B were the settlement agreement and divorce decree. This was a sufficient pleading that the divorce decree be set aside.

Appellee also points out that the one jury issue submitted in the first portion of the trial merely asks whether the settlement agreement should be set aside. He contends that the judgment could only be set aside if the jury affirmatively answered that the divorce decree should be set aside. However, the question of the propriety of setting aside a decree is one for the court, not the jury, and therefore the issue submitted was correct in that regard.

■ Finally, appellant challenges the court's interlocutory order following trial of the first portion of the bill of review proceeding. He argues that the court merely set aside the settlement agreement, not the divorce decree. This was an interlocutory order that was superseded by the final judgment. Consequently, any error therein is harmless.

■ In summary, we hold that the judgment on the bill of review sufficiently disposed of the entire controversy and constitutes a single appealable, final judgment. Appellant's second, third and fourth points of error are overruled.

In his sixth and seventh points of error appellant contends the single jury issue submitted was erroneous and the trial court erred in refusing the special issues requested by appellant. The single special issue submitted to the jury in this cause was as follows:

> Do you find from a preponderance of the evidence that Mary Ann Rathmell, unmixed with any negligence on her part, was induced to agree to the divorce settlement agreement by false representations made by John A. Rathmell or by coercion on his part, or by his failure to disclose material facts?

The only definition provided with the special issue was a definition of negligence.

In his first argument under these points of error, Rathmell contends it was not proper to submit this issue in the disjunctive. Rathmell theorizes that the issue as submitted authorized recovery if the jury found any false representations made by John Rathmell *or* any coercion on his part *or* any failure to disclose material facts unrelated to the Rathmell Companies. Without a proper breakdown of each of the components, he argues there is no way to tell upon which of the three actions recovery was based. He further complains that the issue was too broad and was not broken down to the components of extrinsic fraud.

Rule 277 of the Texas Rules of Civil Procedure governs disjunctive submissions. The Rule states:

The court may submit an issue disjunctively where it is apparent from the evidence that one or the other of the conditions or facts inquired about necessarily exists.

Although the case law interpreting this particular provision is not fully developed, there are several cases discussing the propriety of submitting issues in the disjunctive. A number of these are workers' compensation cases. In these cases a frequent issue is whether an injury is general or confined to a particular part of the body. In such cases submission of that issue in the disjunctive is appropriate. *See Burns v. Union Standard Insurance Co.*, 593 S.W.2d 309 (Tex.1980); *Saldana v. Houston General Insurance Co.*, 610 S.W.2d 807 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Also in workers' compensation cases there frequently are issues on whether the disability is total or partial and temporary or permanent. In such cases it is appropriate to submit those issues in the disjunctive. In fact, the disjunctive submission of the temporary or permanent disability issue is specifically set forth in Tex.R.Civ.P. 277 as an example of a proper issue.

The case law concerning non-workers' compensation cases is somewhat less developed. One of the more noteworthy cases is *Parker v. Keyser*, 540 S.W.2d 827 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n.r. e.). In that case a Mrs. Parker and a Mrs. Parsley were alleged to have converted some of the Keysers' property. At trial special issues were submitted asking whether Mrs. Parker *and/or* Mrs. Parsley wrongfully removed and destroyed the Keysers' property and whether damages should be awarded against Mrs. Parker *and/or* Mrs. Parsley. In each case the jury answered "we do." The defendants objected to these special issues on the ground that the disjunctive submission was improper. The appellate court held the disjunctive submission was improper, noting that Tex.R.Civ.P. 277 authorizes disjunctive submission only where one or the other of the facts inquired about necessarily exists. Also the court stated that it was impossible to determine what the jury had found by its answers to the two special issues. The court went on to hold that under Rule 277 the disjunctive can only be used to present true opposites, that is, alternative grounds of recovery which are factually inconsistent. Each alternative must be exclusive of the others. *Id.* at 831.

In a recent case the Austin Court of Appeals held the use of the disjunctive is authorized where two propositions are mutually exclusive and one or the other necessarily exists. *Lake LBJ Municipal Utility District v. Coulson*, 692 S.W.2d 897 (Tex. App.—Austin 1985, no writ). That court then gave an example of a proper disjunctive:

> Do you find from a preponderance of the evidence that the plans and specifications were or were not prepared in a good and workmanlike manner?
>
> A: They were, or they were not.

*Id.* at 908; *see also Warren v. Denison*, 563 S.W.2d 299 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.).

Under Rule 277 and the above-cited cases it is clear that the single disjunctive issue submitted in the instant case was improper. The alternatives presented were not true opposites; they were not factually inconsistent; they were not mutually exclusive; and one of the three alternatives (false representations, or coercion, or failure to disclose material facts) did not necessarily exist.

In his argument under points six and seven that the one special issue was too broad appellant contends the jury's answer to the issue could have been based on *any* false representations made by John or *any* coercion on his part or *any* failure to disclose material facts unrelated to the Rathmell companies. He points out that the jury could have found that John made a false representation to Mary Ann regarding any other aspect of their marriage (such as his age, health or faithfulness) and answered the issue favorably to Mary Ann. There is merit in this argument by appellant. On a new trial of their cause, either within the special issue itself or by an explanatory instruction, the false represen-

tations inquired about should be defined and limited to false representations that book value of the Rathmell companies was the true market value thereof. Also, the coercion inquired about should be defined and limited to coercion by threats to close the businesses down and make them worthless if Mary Ann insisted on having the companies appraised. If in a new trial the evidence raises a fact issue on John's failure to disclose material facts regarding pre-divorce negotiations for sale of the Rathmell companies, the issue should identify and limit the inquiry to those specific facts. Points six and seven are sustained.

In point of error five appellant contends there was no evidence of extrinsic fraud by John, the undisputed evidence established as a matter of law negligence on the part of Mary Ann, and therefore judgment should have been rendered in favor of John at the conclusion of the first part of the bifurcated trial. Alternatively, appellant contends under the fifth point of error that the evidence was insufficient to establish either extrinsic fraud or non-negligence on the part of Mary Ann. The standard to be applied in bill of review cases is set forth in *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996 (1950), where the supreme court makes the following statements:

> Although the bill of review is an equitable proceeding, before a litigant can successfully invoke it to set aside a final judgment he must allege and prove: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own. *Garcia et al v. Ramos et al*, Tex.Civ.App., 208 S.W.2d 111 [1948], er. ref. Because it is fundamentally important in the administration of justice that some finality be accorded to judgments, these essentials have been uniformly recognized by our courts; therefore, bills of review seeking relief from judgments "are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted"; and the rules

are not to be relaxed merely because it may appear in some particular case that an injustice has been done. *Harding v. W.L. Pearson & Co., et al*, Tex.Com. App., 48 S.W.2d 964 [1932]. As said by the Supreme Court of California, "Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice." *Pico v. Cohn et al.*, 91 Cal. 129, 25 P. 970, 971, 27 P. 537, 13 L.R.A. 336, 25 Am.St.Rep. 159.

*Id.* at 998.

It was further stated in *Hagedorn* as follows:

> Fraud in its relation to attacks on final judgments is either extrinsic or intrinsic. Only extrinsic fraud will entitle a complainant to relief because it is a wrongful act committed "by the other party to the suit which has prevented the losing party either from knowing about his rights or defenses, or from having a fair opportunity of presenting them upon the trial. Such, for instance, as where he has been misled by his adversary by fraud or deception, did not know of the suit, or was betrayed by his attorney. In other words, fraud which denied him the opportunity to fully litigate upon the trial all the rights or defenses he was entitled to assert. 'Intrinsic fraud' in the procurement of a judgment is not ground, however, for vacating such judgment in an independent suit brought for that purpose. And within that term is included such matters as fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed." *State v. Wright*, Tex. Civ.App., 56 S.W.2d 950, 952 [1933], which was cited with approval and substantially quoted by this court in *Crouch et al. v. McGaw*, 134 Tex. 633, 138 S.W.2d 94.

*Id.* at 1001 (emphasis in original omitted).

As a matter of law, misrepresentation with respect to the value of known community assets does not alone constitute extrinsic fraud. *Bankston v. Bankston*, 251 S.W.2d 768 (Tex.Civ.App.—Dallas 1952,

no writ). In *Bankston*, the former wife sought to set aside the property settlement agreement provisions of a divorce decree. She alleged fraud on the part of her former husband in misrepresenting the market value of certain properties to induce her to make a property settlement agreement, that she relied on such representations and was induced thereby to make the property settlement agreement and as a result she did not receive a fair settlement. The trial court sustained the husband's motion for summary judgment and the court of civil appeals affirmed, holding that the allegations of the wife, even if true, portrayed only intrinsic fraud. *Id.* at 772.

Appellant contends that *Bankston* is on all fours with the instant case. In the instant case the record contains evidence not only of a misrepresentation of the market value of the Rathmell companies but also threats by John that if Mary Ann obtained an interest in the companies or even if she merely insisted on having the companies appraised, John would dissolve the companies, close them down and walk across the street and start new companies. Mary Ann had lived with John for twenty years and testified that she knew that he meant business when he opposed an appraisal and threatened to make the companies worthless if she insisted on one.

 Appellant argues that his threats to abandon the companies, walk across the street and start new businesses would not, as a matter of law, constitute proof that Mary Ann was induced to approve the property settlement agreement by duress or coercion on John's part. The basis for his argument is that it is never duress to threaten to do that which a party has a legal right to do. He cites a number of cases as support for his argument. However, his argument appears to this court to be wide of the mark. John did not have a right to prevent Mary Ann from having the companies appraised; and threatening to destroy the value of the companies if she insisted on an appraisal was not something he had a legal right to do. On the contrary, it was a wrongful act that, coupled with misrepresentation of the

value of the companies, amounts to more than intrinsic fraud. If Mary Ann was induced by his threat to forego an appraisal and agreed to the property settlement agreement based on John's representations regarding the value of the companies, she was prevented from having a fair opportunity of presenting in the divorce trial evidence concerning the value of the companies. The requirements set out in *Hagedorn* have thus been met and there is not only some evidence of extrinsic fraud, but the evidence is sufficient to support a jury finding thereon. The instant case is not on all fours with *Bankston* as appellant contends.

 There is other evidence in the record that appellee contends distinguishes the instant case from *Bankston*. More than four months before the divorce John had communications with Robert Berry and David Hales of Hales & Associates of Chicago. Mr. Berry testified that his company was conducting a search and screen operation on behalf of a client who was looking for large insurance agencies that might be acquired. In a letter dated May 23, 1975, Berry sought an appointment with John. In that letter Berry stated that he tentatively planned to be in Houston for several days during the week of June 2nd and would like to meet with John and learn more about the Rathmell companies. Rathmell's name had been brought to Berry's attention by someone at Aetna. During the week of June 2, Berry came to Houston on other business and while in Houston met with John. This meeting was for the purpose of getting acquainted. Berry asked some general questions regarding Rathmell's operations but did not recall discussing any financial aspects of the business. At that meeting Rathmell told Berry that he was talking with a young man (Ralph Gremmel) employed at Alexander and Alexander, another large insurance agency, with a view to recruiting Gremmel to join the Rathmell companies. Rathmell and Berry talked about an incentive compensation program to aid Rathmell in recruiting Gremmel. Berry suggested David Hales was more qualified to study that question. Berry and Rathmell made a tele-

phone call to Hales, and Rathmell discussed with Hales on the telephone the matter of the incentive compensation program and the recruiting of Ralph Gremmel. That telephone call was followed by a letter from David Hales to Rathmell dated June 5, 1975. Appellee places great reliance on the following statements in that letter:

> You feel that, were you willing to trade equities with a public broker at this point in time and personally stay with the organization for the balance of your career, the business might be valued at 10 times net earnings plus the working capital which could be excess to a new owner's needs locally, for a total hypothetical value of $2,584,000 or $25.84 per share. You feel further that the business will grow at a compound rate of at least 15% per year, thereby doubling in value by the end of five years to at least $50 per share, given the availability of a buyer at that time, further organizational development and/or the availability of your personal services.

Appellee contends that this testimony by Berry and the above-quoted portion of the letter from Hales to Rathmell concerned a possible sale or merger of the Rathmell companies and was improperly concealed from Mary Ann during the property settlement negotiations. Appellee argues that these are the "material facts" the concealment of which support the jury finding that Mary Ann was induced to agree to the property settlement agreement. For the reasons set forth below, we hold that there was no evidence of a possible sale or merger of the Rathmell companies before the date of divorce and therefore, as a matter of law, John did not wrongfully conceal from Mary Ann information concerning his communications with Berry and Hales.

To fully understand the statements quoted above from the June 5, 1975, letter from Hales to Rathmell, and to place them in a proper context, it is necessary to examine all of the evidence relating to the relationship between Hales and Associates and John Rathmell. The entire letter of June 5, 1975, dealt with Rathmell's efforts to recruit Ralph Gremmel to work for the Rathmell companies and incentive compensation

to be offered to Gremmel. The incentive compensation consisted in part of proposed stock options to be offered to Gremmel and exercisable over a period of five years. In that connection the Hales June 5 letter confirms Rathmell's statement that the Rathmell companies might have a value of $2,584,000 based on certain assumptions, including John's commitment to stay with the organization for the balance of his career. It is important to note that in this same letter Hales makes the following statement: "[Y]our business is now privately owned, and there is no ready market for the value described above." (Referring to the $2,584,000 value.)

This entire letter and all evidence in the record before us makes it clear that there was no discussion or negotiation concerning any possible sale of the Rathmell companies at any time prior to the divorce on October 1, 1975. There is evidence in the record that late in the year 1975 and early in 1976 John Rathmell had communications with David Hales and Associates about acquiring another agency, the Bill Skinner Insurance Agency. However, there is no evidence in the record concerning any possible sale of the Rathmell companies until some time in March of 1976. In a new trial of the case, the element of failure to disclose material facts should be deleted from the special issue to be submitted to the jury unless additional evidence admitted at the new trial raises a fact issue with respect thereto.

Under point of error five appellant also contends that there was no evidence, or in the alternative insufficient evidence, to support the jury finding that Mary Ann was not negligent in connection with her having been induced to agree to the settlement agreement by John's false representations, or coercion or failure to disclose material facts. Appellant argues that the requirement of non-negligence of Mary Ann requires affirmative proof of non-negligence of both Mary Ann and her attorney in the divorce case. Appellant cites a number of cases in support of this argument and this court agrees with appellant. However, in our opinion the evidence was suffi-

cient to support a finding of non-negligence on the part of both Mary Ann and her divorce case attorney.

 The attorney had recommended an appraisal of the Rathmell companies a number of times after it became apparent that John would not agree that Mary Ann be awarded any interest in the Rathmell companies. Mary Ann's testimony that John absolutely refused to permit an independent appraisal of the companies and threatened to shut the businesses down and make them worthless if she insisted on an appraisal caused her to instruct her attorney not to pursue the appraisal but to proceed with the settlement on John's terms. This evidence was sufficient to prove non-negligence on the part of both Mary Ann and her attorney. Point of error number five is overruled.

As noted earlier, the first portion of the bifurcated trial was presented to the jury on the single issue set out above. Upon the jury's affirmative answer, the court conducted the second part of the trial to identify, value and divide the parties' property. After the second part of the trial was completed, the judge made a number of findings of fact, including the following:

3. John A. Rathmell made false and fraudulent representations to Mary Ann Morrison concerning the value of the parties' insurance businesses....

4. John A. Rathmell falsely and fraudulently represented to Mary Ann Morrison that the value of Rathmell & Co. and John Rathmell & Co., Inc. were $177,950 and $620,000 respectively, and that [sic] the value of the properties awarded to him was $1,330,268.

14. Mary Ann Morrison was induced to agree to the divorce decree and property settlement agreement by John A. Rathmell's false and fraudulent representations of the value of Rathmell & Co. and John Rathmell & Co., Inc., unmixed with any negligence on her part.

15. John A. Rathmell threatened Mary Ann Morrison that he would render Rathmell & Co. and John Rathmell & Co., Inc. worthless if she had them appraised or received any interest in them upon divorce in order to coerce her into executing the property settlement agreement.

16. Mary Ann Morrison was coerced to agree to the divorce decree and the property settlement agreement by the threats of John A. Rathmell, unmixed with any negligence on her part.

17. John A. Rathmell concealed from Mary Ann Morrison material facts concerning the value of Rathmell & Co. and John Rathmell & Co., Inc., including the material fact that he was discussing a merger with a large national insurance broker, prior to and at the time of their divorce.

18. Mary Ann Morrison was induced to agree to the divorce decree and property settlement agreement by John A. Rathmell's concealment of material facts, unmixed with any negligence on her part.

20. Mary Ann Morrison trusted John A. Rathmell and believed him when he falsely represented the value of Rathmell & Co. and John Rathmell & Co., Inc.

Each of the above findings made by the court concerned issues relating to the first part of the trial. In his eighth point of error appellant contends that the trial court erred in making these findings of fact. We agree.

 Although appellant attempted to obtain a far more detailed charge in the first portion of the bifurcated trial, the court overruled his objections to the charge as given and refused his request for additional issues, electing instead to submit a single, brief issue. In an apparent attempt to rectify perceived deficiencies in the charge submitted, the trial judge made the above findings of fact expanding on the jury-tried portion of the bill of review. This was clearly error. Tex.R.Civ.P. 296 provides for findings of fact in a judge-tried case. The first part of this trial was

a jury trial, where findings of fact were neither necessary nor proper. *See Ditto v. Ditto Investment Co.,* 158 Tex. 104, 309 S.W.2d 219, 220 (1958). Many of the findings made by the trial court are in the form in which appellant requested the special issues to be submitted. Under these circumstances, the trial court had no authority to make the findings of fact quoted above. *See Dittberner v. Bell,* 558 S.W.2d 527 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). This is not a case where the trial court is authorized under Tex.R.Civ.P. 279 to make findings of fact on omitted issues necessary to sustain a ground of recovery where the jury has made findings on some but not all of such issues.

Appellee responds suggesting that any error in the making of the findings of fact was harmless because the findings were not necessary to support the judgment. She argues that the single special issue was sufficient. Appellee's response is without merit since we have previously held the special issue was improperly submitted and the jury's answer thereto will not support the judgment. We hold that the court improperly filed findings of fact relating to the bill of review questions presented in the jury-tried portion of the trial. Appellant's eighth point of error is sustained.

In points of error ten through fourteen appellant makes several challenges to the trial court's evaluation of the Rathmell companies. These points of error involve the second portion of bifurcated trial, the part tried before the court. The court made a fact finding that the market value of the Rathmell companies on October 1, 1975, the date of the divorce, was $4,857,-000. The first contention made under point of error ten is that the trial court erred in valuing the companies without excluding personal good will and by assuming John would continue to work for the companies. The record before this court shows the trial court's finding of market value, but the record does not show whether the trial court included or excluded the personal good will of John or whether the trial court did or did not assume that John would continue to work for the companies. The

second contention under point ten is that the court erred in failing to find what portion, if any, of the value of the companies, as found by the court, was attributable to the personal good will of John, and/or the time, toil and talent of John to be expended following the divorce, and/or John's willingness not to compete with the companies.

In considering appellant's point ten and the various contentions made thereunder, it is helpful to review a number of Texas court decisions.

 The supreme court has held that the accrued good will in a private medical practice of a sole practitioner is not property in the estate of the parties and therefore not subject to division upon divorce. *Nail v. Nail,* 486 S.W.2d 761, 764 (Tex.1972). In coming to its conclusion, the supreme court recognized the distinction between good will that may attach to a trade or business and professional good will. From the court's opinion we conclude that professional good will has the following attributes: It attaches to the person of the professional man or woman as a result of confidence in his or her skill and ability. *Id.* at 763. It does not possess value or constitute an asset separate and apart from the professional's person, or from his individual ability to practice his profession. It would be extinguished in the event of the professional's death, retirement, or disablement. *Id.* at 764.

 Two courts of appeals have recognized that a professional person practicing with others under a corporate structure or as a partnership may have accrued personal professional good will and that there might exist at the same time good will attributable to the business or partnership. Good will that exists separate and apart from a professional's personal skills, ability, and reputation is divisible upon divorce, *Geesbreght v. Geesbreght,* 570 S.W.2d 427 (Tex.Civ.App.—Fort Worth 1978, writ dism'd), provided the community is entitled to share in the commercial value of that good will. *Finn v. Finn,* 658 S.W.2d 735, 741 (Tex.App.—Dallas 1983, writ ref'd n.r. e.).

Appellant is not a lawyer or a doctor, as were the professionals in *Nail, Geesbrecht,* and *Finn.* Nevertheless, it is clear that appellant did develop professional good will as the term is used in *Nail.* The Rathmell companies specialized in providing insurance to large businesses and associations. Several witnesses testified that the key to the financial success of the Rathmell companies was John's personality, social contacts, and specialized knowledge of the problems and solutions peculiar to insuring businesses and associations. Personality and social contacts are important in the business because they help "get a foot in the door." Specialized knowledge is needed to get customers the right kind of insurance for a good price. It is undisputed that John was the major "producer" in the companies, meaning he brought in most of the customers. The good will that arose because of these attributes in John attached as a result of confidence in his skill and ability, and did not possess value or constitute an asset separate and apart from John's person or his individual ability to practice his profession, and would be extinguished if he died, or retired, or was disabled. *See Nail,* 486 S.W.2d at 764.

Appellant contends not only that he had accumulated personal professional good will, but that *all* good will associated with the Rathmell companies was his personal good will. We do not agree with appellant's contention that all good will of the companies was his personal professional good will.

There is evidence in the record that the Rathmell companies had good will attributable to the company apart from John Rathmell's personal professional good will. Witnesses testified that the company had several competent key employees who handled the day-to-day needs of clients. The chairman of a company that was the largest client of the Rathmell companies, representing over twenty-seven percent of its total revenues, testified that the Rathmell companies were not a "one-man show," that they had very competent people handling the day-to-day business and that the only reason his company would stay with

the Rathmell companies was that they offered competitive prices and services.

In connection with the second contention under point ten appellant complains of the court's refusal to make additional findings of fact requested by appellant. Appellant's request was as follows:

Respondent requests that the Court find what portion, if any, of the value of the companies ... was attributable to (a) the personal good will of the Respondent and/or (b) the time, toil and talent of the Respondent to be expended following the divorce and/or (c) his willingness not to compete with the companies.

We hold that in finding the value of the Rathmell companies the trial court should have excluded value attributable to the factors listed. If the value found by the court did exclude such factors, the court should have so stated in additional findings of fact. Without such additional findings it is impossible to determine whether the trial court included or excluded them. In making this ruling we are not saying that the trial court should find a value including the above-listed factors and then make separate findings of what portion of such value is attributable to each factor. It is only necessary that the trial court's findings show clearly that the value found by the court excluded such factors. Had the second portion of this bill of review been tried to a jury, appellant would have been entitled to an instruction to the jury that in determining the value of the Rathmell companies the jury should exclude value attributable to such listed factors. With such instruction a jury verdict on value would clearly exclude the listed factors. Appellant was entitled to as much from the court in findings of fact in a non-jury trial. Point of error number ten is sustained.

In point of error number eleven appellant urges that the trial court erred in failing to find or conclude whether appellant had a legal right to terminate his employment with the Rathmell companies and to establish a competing business at the time the alleged misrepresentations were made. Appellant specifically requested such a

finding in his Request for Additional and Amended Findings and Conclusions.

We think the evidence is undisputed that John Rathmell had no employment contracts with the Rathmell companies that committed him to stay or prohibited him from establishing a competing business. The court did not err in refusing to make findings of fact on an issue that is undisputed.

Generally, the failure to make additional findings of fact and conclusions of law after a timely request requires reversal unless the record affirmatively shows that the complaining party has not suffered injury. *Wentz v. Hancock*, 236 S.W.2d 175 (Tex.Civ.App.—Austin 1951, writ ref'd). When the requested additional findings of fact concern matters which were not disputed in the evidence, the court commits no error in refusing to make the additional findings. *Landscape Design & Construction, Inc. v. Harold Thomas Excavating, Inc.*, 604 S.W.2d 374, 378 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Point of error number eleven is overruled.

Appellant uses points of error twelve and thirteen to argue that the trial court erred in admitting evidence of events subsequent to October 1, 1975, especially the price paid in the October 1977 sale of the Rathmell companies. Appellant contends that evidence of the 1977 sale price is not admissible because appellee did not produce evidence of comparability. Texas courts have often admitted valuation evidence based on sales of similar property occurring after the point in time for which a value is sought. *E.g. State v. Bryan*, 518 S.W.2d 928 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ). Such evidence is admissible to show that the estimates of value of the property in controversy were fair and reasonable. *Housing Authority of City of Dallas v. Shambry*, 252 S.W.2d 963 (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.). The usual case involves valuation of real property in condemnation proceedings, but the same principles apply to valuations of personal property. *See* 2 C. McCormick & R. Ray, Texas Law of Evidence Civil and Criminal § 1524 (Texas Practice 3d ed.

1980). In this instance, the property is identical. The subject of the valuation is the Rathmell companies. There was evidence that the two years between the divorce and sale of the companies saw many changes in personnel and profitability of the companies, but this would go to the weight, not the admissibility, of the evidence. We also note that the sale price of the companies meets the test of relevance as defined in our rules of evidence. Tex.R. Evid. 401, 402, 403. A trial court is granted wide discretion in determining admissibility of this type of evidence, and his action will not be overturned unless an abuse of discretion is shown. *Southwestern Bell Telephone Co. v. Ramsey*, 542 S.W.2d 466, 476 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). Points of error twelve and thirteen are overruled.

In his fourteenth point of error appellant contends there is no evidence or insufficient evidence to support the court's finding that the value of the companies was $4,857,000 on October 1, 1975. Harold Ingebretsen, an expert witness called by appellee, testified that in his opinion the Rathmell companies had a value on October 1, 1975, of $4,857,000. Appellant contends that this figure was necessarily based on the assumption by Ingebretsen that John would continue to work for his companies and would not compete. On the contrary, Mr. Ingebretsen testified he knew there was no non-competition agreement and that he discounted the value of the companies on the basis that John could leave. He did not assume John would stay there and work in the business. This certainly constitutes some evidence to support the trial court's finding of value. Also, while there was a great deal of conflicting evidence concerning value and appellant presented expert testimony that the companies were worth no more than book value, we are unable to conclude that the court's finding of value is contrary to the overwhelming weight and preponderance of the evidence. Point of error fourteen is overruled.

In point of error fifteen appellant contends there is no evidence, or insufficient

evidence to support the $3,000,000 award to appellee and such award was an abuse of discretion. Appellant has not briefed this point other than to restate the point of error and add that the award was based on the court's erroneous findings and conclusions. Having failed to brief the point, appellant has waived it.

In point of error seventeen appellant urges that the trial court erred in making rulings in the admission and exclusion of evidence and that the cumulative effect of these errors was to deny appellant a fair trial and cause the rendition of an improper verdict and judgment. Because we are reversing the case on other errors, it is not necessary to pass on point seventeen, or points of error nine and sixteen.

The judgment of the court below is reversed and the cause is remanded for a new trial.