

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00356-CV

_____

MALLORY YORK JR., Appellant

V.

MAKEATHA COOPER-YORK, Appellee

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-677587-20

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Bassel
Concurring Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

## I. Introduction

Appellant Mallory York Jr. raises four issues challenging the denial of his petition for bill of review following a bench trial. The focus of the petition was a provision in a 2014 divorce decree from Dallas County that characterized a home as the separate property of his ex-wife, Appellee Makeatha Cooper-York. Appellant contends that extrinsic fraud taints the decree and that the fraud prevented him both from contesting the decree at the time of its entry and from knowing of the fraud in time for him to file his petition within the four-year statute of limitations that governs bill-of-review proceedings. He also contends that the trial court's failure to file findings of fact and conclusions of law after a timely request and a reminder was harmful error because it impaired his ability to present his appeal to this court.

We will first address the trial court's failure to file findings and conclusions. A combination of factors show that Appellant was not harmed by that failure, namely, (1) Appellant's petition raised a single claim, (2) the record is short, and (3) his brief demonstrates that the presentation of his appeal is not unduly burdened by the task of unraveling why the trial court ruled as it did. Turning to the merits, a single issue is dispositive: Appellant's contention that the discovery rule and fraudulent concealment excused him from filing his petition within the time provided for in the governing statute of limitations presented fact issues to the trial court. We presume that the trial court resolved these issues adversely to Appellant, and we conclude that

the trial court did not abuse its discretion in doing so. Further, Appellant's claim that the decree contains a deficiency that delayed the accrual of the statute of limitations is not borne out in the terms of the decree. Therefore, we affirm.

## II. Factual and Procedural Background

This appeal is in a unique procedural stance. Though we gave the pro se Appellee more than one opportunity to do so, she failed to file a brief that meets the requirements of the Rules of Appellate Procedure. Thus, we struck her nonconforming brief. We proceed as if Appellee failed to file a brief. *See* Tex. R. App. P. 38.9(a) ("If the court determines that this rule has been flagrantly violated, it may require a brief to be amended, supplemented, or redrawn. If another brief that does not comply with this rule is filed, the court may . . . proceed as if the party had failed to file a brief.").

The underlying controversy revolves around a family home. Appellant based his bill-of-review petition on his allegation that Appellee fraudulently obtained a 2014 divorce decree that characterized the home as her separate property. The trial court conducted a brief evidentiary hearing on the bill-of-review petition. At the hearing, Appellant, who was represented by counsel, testified, and Appellee, who appeared pro se, also testified.

The decree at the center of the controversy was introduced into evidence at the bill-of-review hearing. The decree is a form promulgated by TexasLawHelp.org and was completed in handwriting and signed by a Dallas County judge. The decree

3

recites that Appellant was present at the hearing when the decree was entered: "The Respondent [now Appellant] was present, representing himself" and "announced ready for trial."

The decree describes the home as the "Family Home" and sets forth the home's address. The home is characterized in the decree as both separate and community property. Under the section of the decree describing the property as community property, the decree orders that "the Wife is awarded (*gets*) the following property as her sole and separate property, and Husband conveys (*gives*) to Wife his interest in the property, and Husband is divested of (*loses*) all right, title, interest[,] and claim in and to that property." The following is a facsimile of the page within the decree that describes the home's character and its disposition:

4

**Wife's Separate Property**

*(Fill in all lines. If there is no property to declare in any particular category, write "none".)*

The Court confirms that Wife owns the following property as her separate property:

1. House located at: *6027 Guilia Dr. Grand Prairie Tx 75052*
   Street Address    City    State    Zip
   ☐ Wife owned this house before marriage.
   ☐ Wife received this house as a gift or inheritance.

2. Land located at: *6027 Guilia Dr Grand Prairie Tx 75052*
   Street Address    City    State    Zip
   ☐ Wife owned this land before marriage.
   ☐ Wife received this land as a gift or inheritance.

3. Cars, trucks, motorcycles or other vehicles
   Wife owned these vehicles before the marriage or received them as a gift or inheritance during the marriage:

   Year    Make    Model *Rav-4* Vehicle Identification No. [VIN]
   *2007*    *4-Door Toyota Toyota*    *JTMZD33V375D45693*

4. Other Money or Property
   Wife owned the following money or property *before* the marriage:

   Wife inherited or received as a gift the following money or personal property *during* the marriage:

   Wife received the following money recovery for personal injuries that occurred during the marriage that was not for lost wages or medical expenses:

**Wife's Community Property**

The Court ORDERS that the Wife is awarded *(gets)* the following property as her sole and separate property, and Husband conveys *(gives)* to Wife his interest in the property, and Husband is divested of *(loses)* all right, title, interest and claim in and to that property.

Husband IS ORDERED to sign any deeds or documents needed to transfer any property listed below to the Wife. Wife is responsible for preparing the documents.

1. All personal property in Wife's care, custody, or control, or in Wife's name, that this Decree does not give to the Husband.

2. House or land located at: *6027 Guilia Dr Grand Prairie Tx 75052*
   Street Address    City    State    Zip
   Legal Description: *Family Home*

3. Other real property located at: _____
   Street Address    City    State   Zip
   Legal Description: _____

Ignoring the conflicting provisions of the decree, Appellant claimed during the bill-of-review hearing that Appellee had told the divorce court that the home was her separate property instead of community property. To document his claim that the home should have been characterized as community property, Appellant introduced at the bill-of-review hearing the deed conveying the property to Appellee and noted that the deed described Appellee as a married woman. Further, Appellant testified that on the date of the home's conveyance, he and Appellee were married. Because he and Appellee were married at the time of the conveyance, Appellant now believes

that the home was community property. According to Appellant, the deed listed only Appellee's name because she had bought it with her credit at a time when he was having problems with his credit.

Appellant also claimed that he did not contest the divorce because of Appellee's threats to take the home and "the kids." Appellant introduced a cell phone video made more than a year before the date of the decree that allegedly depicted Appellee making the threats that Appellant claimed deterred him from contesting the divorce.

After the entry of the decree, Appellant continued to live with Appellee and their six children in the home. In 2019, Appellee told Appellant to leave the home. Appellant claimed that after being told to leave the home, he decided to check the deed records and obtained a copy of the deed conveying the home to Appellee. Only when he saw the deed did Appellant allegedly realize that the home was community property and was located in Tarrant County. He claims that his realization that the home was located in Tarrant County prompted him to seek a transfer of venue to Tarrant County. In his motion to transfer venue, Appellant claimed that Appellee had committed perjury by claiming the home as her separate property.

On cross-examination, Appellant admitted that at the divorce hearing when the decree was entered, he did not contest the decree. When confronted with the decree's provision ordering him to "sign over your rights to the deed," Appellant's only response was that "[he] did not contest it." He also acknowledged that he had

6

apparently filed a motion for new trial in the original divorce proceeding as early as 2017. In a confusing exchange, Appellant claimed that he had filed the motion to get a new divorce because Appellee had sought child support for a child born to her and Appellant after the date of the original divorce.

Offering a narrative, Appellee testified that she did not "have an attorney" when the decree was entered in 2014 and had no knowledge "of the property being community property or personal property or anything like that." According to Appellee, Appellant stated that he wanted the property at the hearing when the decree was entered, but the judge stated, "The wife, who has taken care of -- who has the custodial rights and has to take care of the children, will get the property . . . ." According to Appellee's testimony, Appellant repeatedly filed motions "to redo for a new trial for the divorce" and claimed that she had been to court multiple times "for the same thing." Appellee also portrayed Appellant's motive to claim that the home was community property was to use his claim of ownership as a defense to a criminal charge resulting from his "break-in" of the home. Finally, Appellee claimed that Appellant had told her "that if [she did not] sell the house and give him his half of whatever profit [she made] from the home, he[] [was] going to take the house from [her]."

After hearing the evidence, the trial court denied Appellant's petition for a bill of review. Appellant requested findings of fact and conclusions of law and gave

7

notice when the filing of those findings and conclusions was past due. The trial court filed no findings and conclusions. Appellant filed a notice of appeal.

### III.  Analysis

**A.  Appellant was not harmed by the trial court's failure to file findings of fact and conclusions of law.**

Appellant's first issue asserts that the trial court committed harmful error by failing to file findings of facts and conclusions of law. As noted, Appellant requested findings and reminded the trial court of its failure to timely file them. *See* Tex. R. Civ. P. 296, 297. We assume for the purposes of resolving Appellant's first issue that the trial court erred by its failure to file findings. We conclude, however, that the error was not harmful.

Though the trial court commits error by failing to file findings, that error does not warrant relief without a showing that the error is harmful. *See* Tex. R. App. P. 44.1(a)(1) (providing that reversible error in civil cases requires a conclusion by the court of appeals that the error "probably prevented the appellant from properly presenting the case to the court of appeals").

Though the failure to file findings is presumed harmful, that presumption is rebutted if the record shows that an appellant suffered no injury from the failure. *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017). The presumption of harm results in the dynamic that when a trial court fails to file findings after a proper and timely request, "the court of appeals must presume the trial court made all

8

the findings necessary to support the judgment." *Id.* As the Texas Supreme Court has explained, the existence of harm turns on the burden created for an appellant in presenting his appeal without the guidance of findings and conclusions charting why the trial court ruled as it did:

> But if a court fails to file findings when the facts are disputed, the burden of rebutting every presumed finding can be so burdensome that it effectively "prevent[s the appellant] from properly presenting its case to the court of appeals or this Court." *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (citing *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam)); *see also Fraser v. Goldberg*, 552 S.W.2d 592, 594 (Tex. Civ. App.—Beaumont 1977, writ ref'd n.r.e.) ("In factually complicated situations in which there are two or more possible grounds for recovery or defense, an undue burden would be placed upon an appellant."). A trial court's failure to file findings in response to a timely and proper request is thus "presumed harmful, unless 'the record before the appellate court affirmatively shows that the complaining party has suffered no injury.'" *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989) (quoting *Wagner v. Riske*, 142 Tex. 337, 178 S.W.2d 117, 120 (1944)).

*Id.* The upshot of the supreme court's guidance is that the presumption of harm does not apply to a simple case because an appellant is not faced on appeal with the task of dissecting multiple permutations of why the trial court may have ruled as it did. Thus, "[w]hen only a single ground of recovery or a single defense is presented to the trial court, the record shows the appellant has suffered no harm because [it] is not forced to guess the reasons for the trial court's judgment." *Mora v. Mora*, No. 04-17-00428-CV, 2018 WL 4903079, at *4 (Tex. App.—San Antonio Oct. 10, 2018, pet. denied) (mem. op.).

9

Here, Appellant claims that he was harmed by the trial court's failure to file findings. He does not articulate how that harm occurred, stating no more in his brief than that "Appellant was harmed." We disagree that the trial court's failure caused Appellant harm. Appellant brought a single claim in his bill-of-review petition. The reporter's record contains only thirty-five pages of testimony, and the relevant portion of the clerk's record is of equal length. Appellant's brief efficiently explains why he contends that the record does not support the trial court's presumed findings on the elements of his bill-of-review claim or the excuses he raised for not filing the petition within the applicable limitations period. The simplicity of the record and the claim, in combination with his brief's demonstrated ability to attack the trial court's presumed findings, assures us that Appellant has not been harmed by a need to guess why the trial court ruled as it did; thus, the trial court's failure to file findings of fact and conclusions of law does not constitute harmful error.

We overrule Appellant's first issue.

**B.    The trial court did not abuse its discretion by concluding that Appellant's bill-of-review claim was barred by the statute of limitations.**

      **1.    We set forth the standards that govern a bill of review, the standards that govern our review, and the principles that govern when a bill-of-review petitioner is excused from the timely filing of a bill of review.**

A bill of review functions as "an independent equitable proceeding brought by a party to a former action who seeks to set aside a judgment that is no longer subject

to challenge by appeal." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 270 n.1 (Tex. 2012) (citations omitted). To protect finality of judgments, "the petitioner's burden is heavy[,] and the grounds on which relief may be obtained by a bill of review are narrow and defined." *Singh v. Trinity Mktg. & Distrib. Co.*, 397 S.W.3d 257, 262 (Tex. App.—El Paso 2013, no pet.) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), and *Transworld Fin. Servs. Corp. v. Briscoe*, 722 S.W.2d 407, 407 (Tex. 1987)).

"Bill[-]of[-]review plaintiffs must ordinarily plead and prove (1) a meritorious defense to the underlying cause of action[;] (2) which the plaintiffs were prevented from making by the fraud, accident, or wrongful act of the opposing party or official mistake[;] (3) unmixed with any fault or negligence on their own part." *In re M.C.B.*, 400 S.W.3d 630, 634 (Tex. App.—Dallas 2013, no pet.) (op. on reh'g).

We review a trial court's denial of a bill-of-review petition under an abuse-of-discretion standard, i.e., we inquire "whether the court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable." *Okon v. Boldon*, No. 02-14-00334-CV, 2015 WL 4652775, at *3 (Tex. App.—Fort Worth Aug. 6, 2015, no pet.) (mem. op.). Our determination regarding whether the trial court properly exercised its discretion is governed by the following factors:

> Under the abuse[-]of[-]discretion standard, challenges to the sufficiency of the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. "An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence." The trial court is "the fact[]finder at

a hearing on a bill of review and has the duty of ascertaining the true facts, and it is within the court's province to judge the credibility of the witnesses and to determine the weight to be given their testimony."

*Id.* (citations omitted).

A four-year statute of limitations governs the filing of a bill-of-review petition. *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998) (applying four-year residual statute of limitations found in Tex. Civ. Prac. & Rem. Code Ann. § 16.051 to bill-of-review proceeding); *see also PNS Stores, Inc.*, 379 S.W.3d at 275. "But when a bill-of-review petitioner proves that the challenged judgment was obtained through extrinsic fraud, the four-year limitations period may be tolled until the bill-of-review petitioner knew or should have known about the fraud and the judgment." *Okon*, 2015 WL 4652775, at *3. Extrinsic fraud is the only exception that a bill-of-review petitioner may invoke to forestall the running of the statute of limitations. *Temple v. Archambo*, 161 S.W.3d 217, 223–24 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.); *see Okon*, 2015 WL 4652775, at *3; *Manley v. Parsons*, 112 S.W.3d 335, 338 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied).

"Extrinsic fraud [may toll the statute of limitations, and extrinsic fraud is of a type] that denies a litigant the opportunity to fully litigate at trial all the rights or defenses that could have been asserted." *PNS Stores, Inc.*, 379 S.W.3d at 275.[1]

---

[1]Extrinsic fraud's counterpart is intrinsic fraud, which

"relates to the merits of the issues which were presented." [*PNS Stores*, 379 S.W.3d] at 275 n.14 (quoting *Tice v. City of Pasadena*, 767 S.W.2d 700,

12

Extrinsic fraud "occurs when a litigant has been misled by his adversary by fraud or was denied knowledge of the suit." *Okon*, 2015 WL 4652775, at *3. The acts that form the basis of the fraud must have been committed purposefully. *Id.*

One example of extrinsic fraud is threats "*that induce* an opposing party to forego the pursuit of rights." *Walker v. Walker*, No. 07-16-00032-CV, 2016 WL 4157766, at *3 (Tex. App.—Amarillo Aug. 3, 2016, no pet.) (mem. op.) (citing *Rathmell v. Morrison*, 732 S.W.2d 6, 14 (Tex. App.—Houston [14th Dist.] 1987, no writ)). Another example in the context of a divorce is one spouse's breach of the fiduciary duty. *Vickery v. Vickery*, No. 01-94-01004-CV, 1997 WL 751995, at *14 (Tex. App.—Houston [1st Dist.] Dec. 4, 1997, pet. denied) (not designated for publication) (op. on reh'g). In the second example, extrinsic fraud may occur if the concealment of facts induces a spouse to enter into an agreed judgment that the spouse would not have agreed to had the whole truth been known. *Id.* at *24–25 ("The supreme court has held that a fiduciary's concealment of material facts, used to induce an agreed or uncontested judgment, that prevents a party from presenting his legal right at trial,

702 (Tex. 1989) (orig. proceeding)). "It is particularly well-established that the alleged perjury of a witness on a contested issue, which the opposing party had the opportunity to refute, is intrinsic fraud." *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984).

*Speirs v. Union Pac. R.R. Co.*, No. 04-18-00343-CV, 2019 WL 451759, at *2 (Tex. App.—San Antonio Feb. 6, 2019, pet. denied) (mem. op.). Intrinsic fraud cannot be the basis of a bill-of-review proceeding. *King Ranch*, 118 S.W.3d at 752 ("Issues underlying the judgment attacked by a bill of review are intrinsic and thus have no probative value on the fraud necessary to [support] a bill of review.").

constitutes extrinsic fraud." (citing *Montgomery*, 669 S.W.2d at 313)); *see also Browning v. Prostok*, 165 S.W.3d 336, 347 (Tex. 2005) ("[A] fiduciary's concealment of material facts to induce an agreed or uncontested judgment, which prevents a party from presenting his legal rights at trial, is extrinsic fraud.").

**2.      We set forth why we reject Appellant's contention that he was excused from filing his petition for bill of review within four years of the date of the divorce decree.**

In his fourth issue, Appellant claims that the record conclusively establishes that his failure to file his bill-of-review proceeding within four years of the date of the divorce decree was excused.[2]  Contrary to Appellant's assertions, the evidence is not conclusive.  Instead, whether his excuses were valid required the resolution of fact issues and a determination of Appellant's credibility; thus, the trial court's presumed adverse finding on the issue fell within the trial court's discretion.  Appellant's inability to overcome the trial court's presumed rejection of his excuses for not timely filing his petition is a sufficient basis for us to affirm the trial court's denial of his bill-of-review petition.  For this reason, we do not reach his challenges to the trial court's other presumed findings that are adverse to his claim.

As we read Appellant's brief, he relies on both the discovery rule and fraudulent concealment as bases to forestall the running of the statute of limitations. These grounds present distinct legal issues.  With respect to the discovery rule, it

---

[2]Appellant's petition raised the question of whether the failure to file the petition within the limitations period was excused.

"applies on a categorical basis to injuries that are both inherently undiscoverable and objectively verifiable. When applicable, the discovery rule 'defers the accrual of the cause of action until the injury was or could have been reasonably discovered.'" *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015) (citations omitted). The discovery rule is distinguished from fraudulent concealment because

> [u]nlike the discovery rule's categorical approach, fraudulent concealment is a fact-specific equitable doctrine that tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence. When a defendant is under a duty to make a disclosure but conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should reasonably have discovered it. . . . "[T]he estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances [that] would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to the discovery of the concealed cause of action." "Knowledge of such facts is in law equivalent to knowledge of the cause of action."

*Id.* at 229–30 (citations omitted).

Both the discovery rule and the estoppel effect of fraudulent concealment inherently involve fact questions. "Inquiries involving the discovery rule usually entail questions for the trier of fact." *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998). On the question of fraudulent concealment, when reasonable diligence did or could have revealed the fraud is an issue of fact. *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57–58 (Tex. 2015). As we have noted, it falls to the trial court's discretion to ascertain the true facts in resolving a bill of review, including what credibility a

15

witness's testimony should receive and the weight it should be given. *Okon*, 2015 WL 4652775, at \*3.

Appellant's fourth issue claiming that the evidence conclusively established that he was excused from filing suit within the four-year statute of limitations is an admixture of the discovery rule and the fraudulent-concealment doctrine. Appellant references the doctrine of fraudulent concealment and asserts that Appellee breached a fiduciary duty to disclose to him that the home was community property. He then summarizes his argument as an invocation of the discovery rule:

> Because Appellant was prevented from discovering the community property due to threats, he made the discovery when he pulled the deed on June 24[,] 2019. Thus, the statute of limitations is tolled . . . until June 24[,] 2019[,] under the discovery rule. Since appellant filed this [b]ill of [r]eview on December 17[,] 2019, it was well within the timeline for filing. The statute of limitations has not run.

Whether viewed through the prism of the discovery rule or the fraudulent-concealment doctrine, how the trial court resolved Appellant's claims of excuse turned on fact-intensive determinations of Appellant's credibility and on alternate reasonable inferences that could have been drawn from the evidence.

On Appellant's assertion—that the evidence is conclusive that he did not know nor could he have known that the home might be community property at the time of the decree's entry—the record is not as certain as Appellant claims. The divorce decree recites that Appellant was at the hearing when the decree was signed. The decree itself has contradictory provisions that characterize the home as both

16

community property and separate property. When challenged with knowledge that the decree characterized the home as community property and ordered him to convey his community interest to Appellee, Appellant did not deny that he had knowledge of the decree's provision but stated only that he did not contest it:

Q. So what I'm trying to clarify, here on the divorce decree . . . . *It's on 21 of 23 on the divorce decree under "Wife's Community Property" where it says that, "Husband is ordered to sign any deeds or documents needed to transfer any property listed below to the Wife. Wife is responsible for preparing the documents."*

*Mr. York, did you agree to sign over your rights to the deed, a judge's order that was actually within the divorce decree, in 2014? Did you agree to do that, Mr. York?*

A. I did not contest it.

Q. You did not contest it?

A. No.

Q. Oh, okay. So then you're saying in 2014, you did not have a problem -- you had no problem signing over the deed to your wife, Ms. -- Mrs. York?

A. I did not -- I did not contest it. [Emphasis added.]

The reasonable inference that can be drawn from this testimony is that Appellant knew that the decree itself suggested a possibility that the home was community property, and this undermines the claim that was the basis of his bill of review, i.e., that he had no inkling that the property was community property until he saw the deed conveying the home to Appellee five years after the decree. This contradiction refutes Appellant's argument that the evidence is conclusive that he did

not know of the possibility that the home might be community property and that he could have no knowledge of how the property should have been characterized other than Appellee's representation. The contradiction makes Appellant's claim of ignorance a fact question that was solely within the trial court's province to accept or reject. Thus, we presume that the trial court found that Appellant was not prevented from discovering the possibility that the home was community property until after he obtained the deed conveying the property to Appellee.

Appellant also turns a blind eye to another contradiction between his theory and the record. He claims that he was ignorant of how the home was titled until he saw its deed in 2019. But he testified that title was structured as a conveyance to his wife because of his poor credit. He did not make any effort to square his convenient claim of ignorance of the state of the title until 2019 with his involvement in the design of the conveyance nor did he say why the lack of an explanation does not undermine his credibility.

The record also casts doubt on Appellant's claim that he was induced by Appellee's threats to not contest the property's characterization. The record contains the following testimony from Appellant that impacts this contention:

Q. Okay. And then was there . . . any particular reason why you did not contest the divorce?

A. Yeah. . . . I didn't contest it because she threatened to take the house and the kids, and, . . . if I contested it, . . . that's what she was gonna do.

Appellant then testified that only when asked to leave the home did he have the impetus to check the deed records:

Q. Okay. In 2019, you found out the house is community property?

A. Yes.

Q. Now, why is that? What happened on June 24th?

A. I went down to the, uh, records building and pulled the deed.

Q. Okay. So what made you on June 24th, 2019, pull the deed where you hadn't done that before?

A. Uh, 'cause she had told me to leave the house, and I couldn't come in the home no more, and so . . .

Q. Okay. So all this time living in the house was in 2014, and you guys were still living together?

A. Yes, we were living together.

Q. Okay. But in June, apparently, she told you to leave, and that's when you decided to check on the deed?

A. Yes.

In Appellant's view, the inescapable inference drawn from his testimony is that until Appellee told him to leave the house five years after the decree was signed, he had no reason to question or investigate the character of the property and that leaving the house also freed him from being cowed into not challenging the decree's provisions. Again, the record undermines Appellant's contention.

A different but also reasonable inference drawn from the record is that Appellant knew (or should have known) that the home might be community property

19

and that his failure to challenge the decree was not induced by Appellee's threats but by complacency so long as Appellee permitted him to live in the house. Being told to leave the house triggered the need to find a claim to the property. His claims of ignorance and submission are also undermined by the fact that he raised challenges to the decree as early as 2017 and sought to extract money from Appellee by attempting to browbeat her into selling the home and splitting the proceeds of its sale with him, even though Appellee and six children lived in the home. His claim—that he sought a new forum for his challenges in Tarrant County only because he suddenly discovered that the house was in that county—can also be viewed as an attempt to find a new forum where he could raise the claims that had been rejected by the divorce court in Dallas County. All these factors demonstrate that the trial court was not bound to accept Appellant's claim that his failure to challenge the characterization of the home earlier was unquestionably the result of his reliance on Appellee's representation or induced by her threats. Instead, these factors create an inference that Appellant's bill-of-review petition was a new gambit in his ongoing effort to alter the provisions of the divorce decree that he found disadvantageous to his desire to cash in on the ownership of the home. Again, Appellant's contention presented a fact question that we presume the trial court exercised its discretion to decide adversely to Appellant.

We reject Appellant's contention that the record conclusively establishes his excuses for failing to file his petition for review within four years of the date of the decree.

**3.** **We set forth the reasons why we reject Appellant's contention that the decree contained a deficiency that delayed the accrual of the statute of limitations until Appellee told him to leave the home.**

In another argument under his fourth issue, Appellant argues that the decree fails to give "any legal description of the land the house is on." He argues that "a close reading" of the decree "shows that it disposes of the house but does not distribute the land [that the] house is on." From this premise, Appellant argues that the "land" is undivided by the decree, and thus he and Appellee are cotenants of it. Because he is allegedly a cotenant of the land, the statute of limitations on his claim did not accrue until Appellee repudiated his interest by forcing him to leave the property. We disagree that any reading—no matter how close—supports the interpretation claimed by Appellant.

As we have noted, the decree contained sections that described the home as both community property and separate property. Both sections describe the property by a street address. In the section of the decree describing the home as community property, it included the words "Family Home" in the blank for "Legal Description." In the section describing the home as separate property, it lists the home's address in the blank following "House located at" and repeats the address in the blank following "Land located at."

Nothing in the decree suggests that its provisions were intended to make a separate disposition of the improvements and the land that the home was built on.

21

The inclusion of the address in both the blanks for "House located at" and "Land located at" in the section describing Appellee's separate property cannot be interpreted to mean that the underlying land was not being characterized as separate property or, as Appellant claims, "does not distribute the land [the] house is on." The two blanks for the description of both "House located at" and "Land located at" appear designed to describe different properties, with the first describing a house and the second a separate parcel of land. Further, the nature of the form used and the handwriting make it appear that it was completed by a layperson. As is so often the case, the layperson filling out the form apparently wanted to make doubly sure that the form was complete and felt compelled to include information in every available blank. This act does not create an ambiguity in the characterization of the land that the home was built on, as Appellant claims. To the contrary, the completion of the blank for "Land located at" appears to be added confirmation that both the improvement of the family home and the land that it is located on are intended to be characterized as separate property.

In addition, describing a property in a decree by its address and as the "parties' home" is sufficient when it is shown that only one property falls within the descriptive information contained in the decree. *Henderson v. Priest*, 591 S.W.2d 635, 636 (Tex. App.—Dallas 1979, writ ref'd n.r.e.) (op. on reh'g) (holding that street address was sufficient when considered with extrinsic evidence showing that only one tract of land could meet description). Here, Appellant makes no suggestion that the

22

provisions of the decree could refer to property other than the one at issue. The decree adequately describes the property at issue—both the improvements and the land—as the property that was the subject of the decree.

We overrule Appellant's fourth issue.

## IV. Conclusion

Having overruled Appellant's dispositive issues—his first issue claiming that the trial court's failure to file findings of fact and conclusions of law harmed him by impeding his ability to present his appeal to this court and his fourth issue claiming that he was excused from filing his bill-of-review petition within the four-year statute of limitations governing bill-of-review claims—we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: July 1, 2021

23