528 A.2d 295

Carl L. Maenak and Sarah S. Maenak, h/w, Petitioners *v.* Agricultural Lands Condemnation Approval Board and Wallace Township Municipal Authority, Respondents.

Wallace Township Municipal Authority, Petitioner *v.* Carl L. Maenak and Sarah S. Maenak, h/w, Respondents.

Argued December 9, 1986, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Albert P. Massey, Jr.,* with him, *Richard L. Cantor* and *Sean A. O'Neill, Lentz, Cantor, Kilgore & Massey, Ltd.,* for petitioners/respondents, Carl L. Maenak and Sarah S. Maenak, h/w.

*Gerald T. Osburn,* Acting Chief Counsel, with him, *John B. Hannum, Jr.,* for respondent, Agricultural Lands Condemnation Approval Board.

*William H. Lamb,* with him, *Nancy C. M. Balliet, Lamb, Windle & McErlane, P.C.,* for respondent/ petitioner, Wallace Township Municipal Authority.

OPINION BY JUDGE BLATT, July 10, 1987:

Carl L. Maenak and his wife, Sarah S. Maenak (the Maenaks) and the Wallace Township Municipal Authority (Authority) have filed separate petitions for review[1] from the order of the Agricultural Lands Condemnation

---

[1] The Maenaks' petition for review is docketed at No. 1257 C.D. 1986 and the Authority's petition is docketed at No. 1406 C.D. 1986.

Approval Board (Board). We have consolidated these petitions for review by a prior order and will address and dispose of the issues raised therein in this opinion.

The relevant factual background of this matter is essentially undisputed by the parties. The Maenaks own approximately fifty-two acres of land (the property) in the village of Glenmoore, Wallace Township, Chester County against which the Authority instituted condemnation proceedings. The Authority proposes to use the property for a spray irrigation waste disposal project (project).[2] After the Authority had obtained a writ of possession for the property, the Maenaks filed preliminary objections *nunc pro tunc* in the common pleas court, contending that the Authority had failed to seek approval of the Board pursuant to Section 306 of The Administrative Code of 1929 (Code).[3] The Authority then agreed to request a Board hearing, which was subsequently requested and held.

---

[2] As is indicated by the record in this case, a spray irrigation waste disposal project utilizes two collection lagoons wherein waste water is treated and from which the waste water is dispersed over a specified parcel of land. Agricultural use of this land is then required because whatever crops are planted on the land extract the nutrients from the soil which have been deposited by the spraying, thereby completing the disposal cycle.

[3] Section 306 of the Code, Act of April 9, 1929, P.L. 177, added by Section 1 of the Act of December 7, 1979, P.L. 478, 71 P.S. §106, is the statute which created the Board and establishes the Board's duties and powers as follows:

(a) The Agricultural Lands Condemnation Approval Board is hereby created as an independent administrative board and shall be made up of six (6) members, consisting of the Director of the Office of Policy and Planning, or his designee, the Secretary of Agricultural, or his designee, the Secretary of Environmental Resources, or his designee, the Secretary of Transportation, or his designee, and two active farmers appointed by the Governor, with the advice and consent of a majority of the Senate, for a

The Board, at the hearing, with all of the parties in attendance, received testimony and argument from the parties, and thereafter issued the following order:

AND NOW, this 1st day of April, 1986, the Board having received a request on February 10, 1986 from the Wallace Township Municipal

---

term of four (4) years. The Secretary of Agriculture shall be chairman of such committee and shall convene the committee from time to time as needed to carry out its duties. The farm members of the committee shall be reimbursed for actual expenses incurred in the performance of their duties. Such expenses and any others incurred by the committee shall be paid for from appropriations made to the Office of State Planning and Development.

(b) Before condemning for any of the purposes set forth in subsection (d) any agricultural lands, as classified by the Agricultural Soil Conservation Service of the United States Department of Agriculture, which lands are being used for productive agricultural purposes, but not including the growing of timber, the Commonwealth of Pennsylvania and any of its political subdivisions, agencies or authorities shall request the Agricultural Lands Condemnation Approval Board to determine that there is no reasonable and prudent alternative to the utilization of such lands for the project.

(c) The board shall have sixty (60) days in which to determine whether there is a feasible and prudent alternative to the condemnation. If the board determines that there is no feasible and prudent alternative, or if the board fails to act within sixty (60) days of receipt of the request, the requesting body may proceed to condemn, otherwise, the condemnation shall not be effected.

(d) The Board shall have jurisdiction over condemnation for the following purposes:

(1) Highway purposes, but not including activities relating to existing highways such as, but not limited to, widening roadways, the elimination of curbs or reconstruction.

(2) Disposal of solid or liquid waste material, but not including underground pipes used to transport waste.

Authority pursuant to 71 Pa. Statutes §106 asking that the Board determine that there is no reasonable and prudent alternative to the utilization of approximately fifty-two (52) acres of land for a proposed waste water spray irrigation project, and

Further, a hearing on this matter was held before the Board on March 14, 1986, and

Further, the Board met in open session on April 1, 1986 to decide this matter and the result was that three members determined that there was a feasible and prudent alternative to the condemnation and three members determined that there was not a feasible and prudent alternative to the condemnation, and

Therefore, since this Board is unable to act in this matter, it is hereby Ordered that Wallace Township Municipal Authority may proceed to condemn land owned by Carl and Sally Maenak.

For the Agricultural Lands Approval Board.

(S) Kirk Wilson,

Chairman

On review, the Maenaks contend that the Board, in allowing the condemnation to proceed, erroneously interpreted the legal effect of its evenly-divided vote. They argue that the correct interpretation of this vote is to prohibit further implementation of the project.

The Authority and the Board, of course, argue to the contrary. They claim that the evenly-divided vote prevented the Board from being able "to act" within the meaning of Section 306(c).

There is no definition of the term "to act" within Section 306, so we must construe this phrase according to its common and approved usage. Section 1903(a) of the Statutory Construction Act of 1972 (S.C.A.), 1 Pa. C. S. §1903(a); *Conference of Pennsylvania Liquor Con-*

*trol Board Lodges v. Pennsylvania Labor Relations Board,* 71 Pa. Commonwealth Ct. 316, 454 A.2d 686 (1983).

Webster's Third New International Dictionary 20 (1966) pertinently defines the verb "act" as meaning "to move to action"; "to carry out into action" and "to give a decision or award (as by vote of a deliberative body or by judicial decree)." Using these definitions, we believe that, inasmuch as the Board, in response to the Authority's request, scheduled and held a hearing at which it received testimony and legal argument after which it conducted a vote among its members, the Board must be said to have acted in this matter. We believe that the Authority and the Board construed the term too narrowly and that such an interpretation, if allowed to stand, would produce a result which is absurd or unreasonable, a result which we must presume the legislature did not intend. Section 1922(1) of the S.C.A., 1 Pa. C. S. §1922(1); *Unionville-Chadds Ford School District v. Rotteveel,* 87 Pa. Commonwealth Ct. 334, 487 A.2d 109 (1985). Moreover, the appellate courts of the Commonwealth have clearly held that an evenly-divided administrative vote has the effect of denying the action requested of it, which here would be a determination as to whether or not there was a feasible and prudent alternative to the condemnation of the property. *Giant Food Stores, Inc. v. Zoning Hearing Board of Whitehall Township,* 93 Pa. Commonwealth Ct. 437, 501 A.2d 353 (1985); *Pennsylvania Publications, Inc. v. Pennsylvania Public Utility Commission,* 152 Pa. Superior Ct. 279, 32 A.2d 40 (1943), *rev'd on other grounds,* 349 Pa. 184, 36 A.2d 777 (1944). We must conclude, therefore, that the Board erred in interpreting its evenly-divided vote as an inability to act and as permission for the condemnation to proceed.

This does not end our inquiry, however. The Authority, under its petition for review at No. 1406 C.D. 1986,

contends that the Board was without jurisdiction to consider this case because the Board made no finding that the property had been classified as agricultural land by the Agricultural Soil Conservation Service of the United States Department of Agriculture. The Authority also argues that the Board lacked jurisdiction because most of the property will continue to be used in agriculture as part of the project and because Section 306 was not intended to apply to such circumstances.

In regard to the Authority's first contention, we find ourselves in agreement with the argument of the Maenaks that the Authority, the party which requested the Board to exercise its review, is considered to have thereby agreed to the existence of jurisdictional facts and is, thereafter, precluded from disputing such facts at a later stage of the proceedings to the prejudice of the other party. *See Dock v. Cauldwell,* 19 Pa. Superior Ct. 51 (1902); *see also Montgomery v. Kennedy,* 651 S.W. 2d 814 (1983), *rev'd on other grounds,* 669 S.W. 2d 309 (1984). We believe, therefore, that, having submitted this request for a ruling to the Board, the Authority necessarily admitted to the existence of the requisite jurisdictional fact, *i.e.,* the agricultural lands classification.[4]

The remaining jurisdictional point raised by the Authority is, we believe, without merit. The Authority would have us read into Section 306 a legislative intent to bar the Board from jurisdiction over land which, as will the bulk of the acreage proposed for the project, will remain in agricultural use. Unfortunately, for the authority, we are precluded from so doing because the

---

[4] This holding, of course, in no way detracts from the axiomatic rule that jurisdiction may not be conferred by the parties where none exists. *See Roberts v. Martorano,* 427 Pa. 581, 235 A.2d 602 (1967).

unambiguous language of Section 306 granted to the Board no power, express or implied, to consider any factors beyond the classification of the land at the time such a request is before the Board and whether or not a feasible and prudent alternative exists to the condemnation of the subject land for either highway purposes or for purposes of solid or liquid waste disposal. And where, as here, the words of a statute are clear and free from all ambiguity, we may not indulge in statutory construction. Section 1921(b) of the S.C.A., 1 Pa. C. S. §1921(b); *see In Re Private Detective License of Keibler,* 279 Pa. Superior Ct. 276, 420 A.2d 1331 (1980) (court does not have power to create additional authority in a statute if the words therein are clear and free from all ambiguity).

We must, therefore, reject the jurisdictional challenges raised by the Authority.

Accordingly, we will reverse the order of the Board.

ORDER

AND NOW, this 10th day of July, 1987, the order of the Agricultural Lands Condemnation Approval Board in the above-captioned matter is reversed.